## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**NATIONAL PRESS CLUB JOURNALISM
INSTITUTE**
529 14th St. NW
Washington, DC 20045

and

**KATHY KIELY**,

Plaintiffs,

v.

Civil Action No. _____

**U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT**
500 12th St., SW
Washington, D.C. 20536

and

**UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,**
245 Murray Lane SW
Washington, DC 20528

Defendants.

## COMPLAINT

The National Press Club Journalism Institute ("NPCJI" or the "Institute") and Kathy

Kiely ("Kiely") (collectively, "Plaintiffs"), by and through their undersigned counsel, allege as

follows:

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"

or the "Act"), for declaratory, injunctive, and other appropriate relief by the NPCJI and Ms.

Kiely against the United States Immigration and Customs Enforcement ("ICE") and the United

States Department of Homeland Security ("DHS") (collectively, "Defendants").

2.      By this action, Plaintiffs seek to compel Defendants to comply with their obligations under FOIA to release requested records concerning the United States' treatment of Mexican journalist Emilio Gutiérrez-Soto, his son, Oscar Emilio Gutiérrez-Soto, and their attorney, Eduardo Beckett, all of whom have provided privacy waivers to Defendants.

3.      As a result of his reporting on corruption within the Mexican military, Mr. Gutiérrez-Soto was forced to flee Mexico with his son in 2005. Fearing for their lives, Mr. Gutiérrez-Soto and his son sought safety through asylum in the United States, only to be detained and demeaned by the United States government. The NPCJI and Ms. Kiely have diligently sought records from Defendants in connection with their reporting on the government's treatment of Mr. Gutiérrez-Soto and his son, and to further the educational and other efforts of the journalism community in support of Mr. Gutiérrez-Soto. To date, Defendants have refused to release a single record to Plaintiffs in response to their FOIA request, or to cite any legal justification to withhold them, in clear violation of FOIA. Faced with Defendants' unlawful refusal to release the records Plaintiffs requested under the Act, Plaintiffs now bring this action.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5.      Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

6.      Plaintiff National Press Club Journalism Institute is a nonprofit affiliate of the National Press Club. Its mission is to promote a transparent global society through an independent and free press, and to equip journalists with modern tools to inspire civic

engagement and inform the public.  The NPCJI is located at the National Press Club, 529 14th St. NW, Washington, DC 20045.

7.       Plaintiff Kathy Kiely is the Press Freedom Fellow at NPCJI.  In her more than 40-year career as a journalist, Ms. Kiely has served as the Washington bureau chief for the Houston Post and the Arkansas Democrat-Gazette, a White House correspondent for the New York Daily News, a congressional correspondent for USA TODAY, and as an editor for National Journal, Bloomberg Politics, and Bill Moyers.  She is currently the Lee Hills Chair in Free-Press Studies at the Missouri School of Journalism.  She resides in Columbia, Missouri.

8.       Defendant ICE is an agency of the federal government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702, and a component of Defendant DHS, that has possession, custody, and/or control of the records that Plaintiff seeks.  ICE's headquarters are located at 500 12th St., SW, Washington, D.C. 20536.

9.       Defendant DHS is an agency of the federal government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702, that has possession, custody, and/or control of the records that Plaintiff seeks.  DHS's headquarters are located at 245 Murray Lane SW, Washington, DC 20528.

## FACTUAL ALLEGATIONS

### Background

10.       According to a 2017 report by the Special Rapporteurs on Freedom of Expression of the Inter-American Commission on Human Rights and the United Nations, there is a "crisis for freedom of expression in Mexico[.]"  *Preliminary Observations by the UN Special Rapporteur on freedom of expression and the Special Rapporteur on freedom of expression of the IACHR following their joint visit to Mexico, 27 November – 4 December 2017*, United

Nations (Dec. 4, 2017), *archived at* https://perma.cc/756E-LQX9 (hereinafter, the "Special

Rapporteurs' Report").

11.     That crisis is due, in no small part, to the rampant violence and intimidation aimed

at journalists in Mexico.  Per the report by the Special Rapporteurs:

> the situation of journalists in Mexico [] cannot be described as other than
> catastrophic.  Since 2010, 73 journalists have been killed; 12 journalists have been
> subject of enforced disappearances, while there have been 44 attempted killings.
> Since 2006, the National Human Rights Commission has registered 52 attacks
> against media outlets.  So far in 2017, at least 11 journalists have been killed. They
> are Cecilio Pineda, Ricardo Monlui, Miroslava Breach, Maximino Rodriguez,
> Filiberto Alvarez, Javier Arturo Valdez, Salvador Adame, Hector Jonathan
> Rodriguez, Candido Rios, Juan Carlos Hernandez and Edgar Daniel Esqueda.
> Many of the attacks are carried out against journalists reporting on corruption,
> trafficking, involvement of public authorities with organized crime, police violence
> and on matters related to elections.

Special Rapporteurs' Report. *See also Report to the to the 74th General Assembly*, Inter

American Press Association (Oct. 17, 2018), *archived at* https://perma.cc/7D9Z-JLYK

(documenting and discussing violence against journalists in Mexico in 2018).

12.     According to the Special Rapporteurs' Report, all levels of government in Mexico

have failed to adequately investigate violence against journalists or protect them from harm:

"Indeed, impunity for crimes is the general rule in cases of reported journalist killings and

disappearances."

13.     Those findings are mirrored in a recent report from the United States

Congressional Research Service, which states that "[i]ncreasing violent crimes against journalists

and the impunity enjoyed by those who perpetuate those crimes have led to journalistic self-

censorship in Mexico, inhibiting people's access to information, government accountability, and

freedom of expression."  Congressional Research Service, *Violence Against Journalists and

Media workers in Mexico and U.S. Policy* (May 3, 2018), *archived at* https://perma.cc/MH2E-

AZ2A.

14.     Emilio Gutiérrez-Soto is an experienced Mexican journalist who faced threats of violence in Mexico because of his reporting.

15.     Following his reporting on corruption and abuses by the Mexican military in 2005, Mr. Gutiérrez-Soto "was summoned to meet with several military leaders. 'You've written three idiotic stories,' Gutiérrez said a general warned him. 'There will not be a fourth.'" Kate Linthicum, *Journalists are fleeing for their lives in Mexico. There are few havens*, L.A. Times (Feb. 5, 2018), *archived at* https://perma.cc/T5PC-AWGN.

16.     A number of events following that frightening meeting also indicated that Mr. Gutiérrez-Soto was in danger, including "patrols of soldiers dr[iving] slowly back and forth in front of his house[,]" *id.*, his home being ransacked by the military, being followed, and, finally, a tip that individual(s) in the military wanted him dead.

17.     In 2008, fearing for their lives, Mr. Gutiérrez-Soto and his (then) 15-year old son, Oscar, drove to the United States and sought political asylum.

18.     Following their arrival in the United States, Mr. Gutiérrez-Soto and his son were separated and detained by ICE; Mr. Gutiérrez-Soto was not released for several months.

19.     After his release, Mr. Gutiérrez-Soto settled in New Mexico with his son, where they lived for nine years while their request for asylum was being processed.

20.     Notwithstanding the substantial threat to their safety in Mexico, their asylum claim was denied by the United States government in the summer of 2017.

21.     In October 2017, the National Press Club honored Mr. Gutiérrez-Soto, who accepted the John Aubuchon Press Freedom Award on behalf of Mexico's journalists. *See* https://www.youtube.com/watch?v=vTqnCyg5qS4.  During that ceremony, Mr. Gutiérrez-Soto

"criticized ICE and the government . . . ." *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 933 (W.D. Tex. 2018).

22.     Less than two months later, on or about December 7, 2017, Mr. Gutiérrez-Soto and his son were arrested during a routine visit to an ICE facility.

23.     The United States government has claimed that Mr. Gutiérrez-Soto and his son were detained "based on a warrant issued after the removal order issued by the immigration judge became final in August 2017." *Id.*

24.     However, internal ICE emails from February 2017 show that the agency began targeting Mr. Gutiérrez-Soto well in advance of the decision on his asylum claim. *Id.* (citing exhibit showing "Mr. Gutierrez-Soto on a list as a 'candidate for arrest' in an email string titled 'Non-Detained Target List'").

25.     Further, "William McCarren, the Executive Director of the National Press Club, affirm[ed] under oath that an ICE official told him to 'tone it down' during a meeting regarding Mr. Gutierrez-Soto, and he interpreted the comment in the context of the conversation to mean that the media should stop attracting attention to [Mr. Gutiérrez-Soto's and his son's] cause." *Id.* at 933; *see also* Unsworn Declaration of William C. McCarren in support of *Amici Curiae* Journalist Organizations in Support of Emilio Gutierrez-Soto and Oscar Emilio Gutierrez-Soto, *archived at* https://perma.cc/4LVR-Z772.

26.     Mr. Gutiérrez-Soto and his son were in the process of being physically taken to the Mexico border by United States government personnel, to be ejected from the United States, when an emergency stay was granted by the Board of Immigration Appeals. Mr. Gutiérrez-Soto and his son were subsequently put in detention in an ICE facility in El Paso, Texas.

27.     The treatment of Mr. Gutiérrez-Soto and his son by the United States government,

including the denial of their asylum claims, has been roundly criticized.  *See*, *e.g.*, Editorial, *A Mexican journalist's life hangs in the balance*, Wash. Post (Dec. 11, 2017), *archived at* https://perma.cc/4J4B-NVTE.

28.     In April 2018, still detained by the United States government, Mr. Gutiérrez-Soto was invited by the University of Michigan to a prestigious journalism fellowship program.

29.     On or about March 6, 2018, Mr. Gutiérrez-Soto and his son filed a habeas petition in the Western District of Texas.  The government moved to dismiss the petition and/or for summary judgment on the claims, which that court granted in part and denied in part on or about July 10, 2018.

30.     In denying the government's motion with respect to the petitioners' First Amendment claims, the Court held that:

> Petitioners have offered evidence that allows for an inference that they were targeted before their asylum case was denied and ICE officials did not approve of the negative press that Petitioners were generating. Drawing these inferences in favor of Petitioners, the nonmoving party, there is support for Petitioners' claim that Respondents retaliated against them for asserting their free press rights

*Gutierrez-Soto*, 317 F. Supp. 3d at 933.

31.     The Court further held that "the evidence could establish that Respondents retaliated against immigrant activists who criticized the government's policies."  *Id.* at 934.

32.     Following that ruling, and facing a deadline to turn over "emails and other correspondence detailing why [Mr. Gutiérrez-Soto and his son] were placed on a 'non-detained target list' created by ICE officials shortly after President Donald Trump took office[,]" the United States instead opted to release them, which occurred on or about July 26, 2018.  Julián Aguilar, *Mexican reporter and son released from immigration detention in Texas*, The Texas Tribune (Jul. 26, 2018), *archived at* https://perma.cc/ZP4D-5XBV.

33.     Mr. Gutiérrez-Soto currently resides in Ann Arbor, Michigan, where he is a Senior Press Freedom Fellow at the Wallace House at the University of Michigan.

**Plaintiffs' FOIA Request**

34.     On or about May 18, 2018, Ms. Kiely, on behalf of herself and NPCJI, submitted a FOIA request to ICE via email (the "Request").  A true and correct copy of the Request (with redactions for dates and places of birth, A-Numbers, addresses, and phone numbers[1]) is attached hereto as Exhibit A and is incorporated by reference herein.

35.     The Request sought two categories of records:

(1)  All records, including but not limited to emails, memos, text messages, and other communications, since January 1, 2017, that mention Emilio Gutierrez-Soto (aka Emilio Gutierrez Soto) or his son, Oscar Gutierrez-Soto (aka Oscar Gutierrez Soto);

(2) All records of ICE facilities and/or personnel in El Paso Texas, including but not limited to communications (e.g. emails, memos, text messages) and any mechanisms used to limit or block phone calls from detainees at ICE's El Paso facilities, since March 1, 2018, that mention or contain any of the following:
        a. [phone number];
        b. [phone number];
        c. Eduardo Beckett
        d. Beckett Law Firm.

36.     The Request attached privacy waivers from Emilio Gutiérrez-Soto, Oscar Gutiérrez-Soto, and Eduardo Beckett.  *See* Ex. A.

37.     The Request included a request for categorization of NPCJI and Ms. Kiely as representatives of the news media pursuant to 5 U.S.C. § 552(a)(4)(A), and set forth facts and argument in support thereof.  *See* Ex. A.

38.     The Request complied with all applicable DHS and ICE regulations regarding the submission of FOIA requests.

---

[1] *See* Fed. R. Civ. P. 5.2.

**Defendants' Treatment of Plaintiffs' FOIA Request**

39.    On or about June 14, 2018, ICE acknowledged receipt of the Request in an email to Ms. Kiely, a true and correct copy of which with attachment (with redactions for dates and places of birth[2]) is attached hereto as Exhibit B (the "ICE Acknowledgment").

40.    The ICE Acknowledgement assigned the Request tracking number 2018-ICFO-42786, granted the request for categorization as members of the news media, and purported to invoke a 10-day extension for the Request under 5 U.S.C. § 552(a)(6)(B).  *See* Ex. B.

41.    The ICE Acknowledgment also included, as an attachment, a letter from ICE FOIA Officer Catrina M. Pavlik-Keenan, stating she had "determined that portions of the information you are seeking are under the purview of the U.S. Citizenship and Immigration Services (USCIS) . . . .  Therefore, I am referring your request to the FOIA Officer for [USCIS], Jill Eggleston, for processing and direct response to you."  Ex B.

42.    By letter dated June 21, 2018, Ms. Kiely received a letter from USCIS, stating that it "received your request for information relating to Oscar Gutiérrez Soto 2018-ICFO-42786 . . . ." (the "USCIS Acknowledgement").  A true and correct copy of the USCIS Acknowledgment is attached hereto as Exhibit C.

43.    The USCIS Acknowledgment purported to invoke a 10-day extension under 5 U.S.C. § 552(a)(6)(B) and provided the tracking number NRC2018096015.  *See* Ex. C.

44.    On or about July 17, 2018, having received no further communications or records from ICE or USCIS, Plaintiffs' counsel submitted, via U.S. Mail, an administrative appeal of the Request to both ICE and USCIS (the "Administrative Appeal") concerning their failure to comply with FOIA's statutory time limits for providing a determination and USCIS's failure to

---

[2] *See* Fed. R. Civ. P. 5.2.

categorize Plaintiffs as representatives of the news media.  A true and correct copy of the

Administrative Appeal (with redactions for dates and places of birth, A-Numbers, addresses, and

phone numbers[3]) is attached hereto as Exhibit D.

45.     On or about August 22, 2018, Ms. Kiely received a letter from ICE via email (the

"ICE Administrative Appeal Determination"), a true and correct copy of which (with redactions

for phone numbers) is attached hereto as Exhibit E.

46.     The ICE Administrative Appeal Determination states:

> [u]pon a complete review of the administrative record, ICE has determined
> that new search(s) [sic] or, modifications to the existing search(s) [sic],
> could be made.   Therefore, ICE is remanding your request to the ICE FOIA
> Office for processing and re-tasking to the appropriate agency/office(s) to
> obtain any responsive documents.

Ex. E.

47.     On or about September 17, 2018 Ms. Kiely received a letter from USCIS via U.S.

mail (the "USCIS Administrative Appeal Denial"), a true and correct copy of which is attached

hereto as Exhibit F.

48.     The USCIS Administrative Appeal Denial stated that the Request "is not subject

to administrative appeal at this time . . . ."  Ex. F.

49.     As of the filing of this Complaint there has been no further communication from

ICE, USICS, or DHS regarding the Request.

50.     As of the filing of this Complaint, Defendants have not released any records or

portions thereof in response to the Request.

51.     As of the filing of this Complaint, it has been 182 calendar days and 125 working

days since the Request was submitted, 149 calendar days and 103 working days since the

---

[3] *See* Fed. R. Civ. P. 5.2.

Administrative Appeal was submitted, and 113 calendar days and 77 working days since the ICE

Administrative Appeal Determination was rendered.

## CAUSES OF ACTION

### Count I

### Violation of FOIA for Failure to Comply with Statutory Deadlines

### (All Defendants)

52.     Plaintiffs repeat and re-allege paragraphs 1–51.

53.     Defendants are agencies subject to FOIA.

54.     Through the Request, Plaintiffs properly asked for records within the possession,

custody and/or control of Defendants.

55.     Defendants failed to make a determination with respect to Plaintiffs' Request

within the 20-working day deadline required by FOIA.  5 U.S.C. § 556(a)(6)(A).

56.     Plaintiffs have and/or are deemed to have exhausted applicable administrative

remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(A); *id.* § 552(a)(6)(C).

### Count II

### Violation of FOIA for Wrongful Withholding of Agency Records

### (All Defendants)

57.     Plaintiffs repeat and re-allege paragraphs 1–51.

58.     Defendants are agencies subject to FOIA.

59.     Through the Request, Plaintiffs properly asked for records within the possession,

custody and/or control of Defendants.

60.     Defendants have not released any records or portions thereof in response to Plaintiffs' Request.

61.     Defendants have not cited any applicable law to withhold records or portions thereof in response to Plaintiffs' Request.

62.     Defendants have failed to identify whether or how disclosure of the records sought by Plaintiff's Request would foreseeably harm an interest protected by a FOIA exemption or that disclosure is prohibited by law.  5 U.S.C. § 552(a)(8)(A).

48.     Defendants have improperly withheld agency records responsive to the Request in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

49.     Plaintiffs have and/or are deemed to have exhausted applicable administrative remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(A); *id.* § 552(a)(6)(C).

## Count III

### Violation of FOIA for Failure to Conduct a Reasonable Search

### (All Defendants)

63.     Plaintiffs repeat and re-allege paragraphs 1–51.

64.     Defendants are agencies subject to FOIA.

65.     Through the Request, Plaintiffs properly asked for records within the possession, custody and/or control of Defendants.

66.     Defendants failed to conduct a proper or sufficient search for records in response to the Request.

67.     Defendants' failure to conduct a proper or sufficient search in response to the Request violates their obligations under FOIA.  5 U.S.C. § 552(a)(3).

68.     Plaintiffs have and/or are deemed to have exhausted applicable administrative remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(A); *id.* § 552(a)(6)(C).

## Count IV

### Violation of FOIA for Failure to Grant News Media Status

### (Defendant DHS)

69.     Plaintiffs repeat and re-allege paragraphs 1–51.

70.     By the Request, Plaintiffs set forth sufficient facts and argument to be categorized as representatives of the news media.

71.     By the USCIS Acknowledgement and USCIS Administrative Appeal Denial, Defendant DHS unlawfully refused to recognize Plaintiffs as representatives of the news media.

72.     Plaintiffs have and/or are deemed to have exhausted their applicable administrative remedies.  5 U.S.C. § 552(a)(6)(A); *id.* § 552(a)(6)(C).


## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) order Defendants to conduct a reasonable search for all records responsive to Plaintiffs' Request, and to immediately disclose all non-exempt records responsive to the Request in their entirety, as well as all non-exempt portions of responsive records;

(2) issue a declaration that Plaintiffs are entitled to disclosure of the records responsive to the Request;

(3) enjoin Defendants from continuing to withhold any and all non-exempt records or portions thereof responsive to Plaintiffs' Request;

(4) issue a declaration that Plaintiffs are entitled to news media fee status;

(5) award Plaintiffs reasonable attorney's fees and costs incurred in this action pursuant

to 5 U.S.C. § 552(a)(4)(E); and

(6) grant such other relief as the Court may deem just and proper.

Dated December 13, 2018

Respectfully submitted,

/s/ Katie Townsend
Katie Townsend
DC Bar No. 1026115
Adam A. Marshall
DC Bar No. 1029423
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone:  202.795.9300
Facsimile:  202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org

Charles D. Tobin
D.C. Bar No. 455593
BALLARD SPAHR LLP
1909 K Street, NW 12th Floor
Washington, DC 20006-1157
Phone: 202.661.2200
Email: tobinc@ballardspahr.com

*Counsel for Plaintiffs*