UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL PRESS CLUB JOURNALISM INSTITUTE, et al. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 18-cv-2932 (RC) |
| U.S. IMMIGRATION AND CUSTOM ENFORCEMENT, et al. | ) ) ) ) | |
| Defendants. | ) ) | |

**OPPOSED MOTION FOR LEAVE TO FILE REPRESENTATIVE SAMPLE *VAUGHN* AND PARTIAL CONSENT MOTION FOR EXTENSION TO FILE MOTION FOR SUMMARY JUDGMENT**

This case involves a Freedom of Information Act ("FOIA") request directed to United States Immigration and Custom Enforcement ("ICE"), with a portion of the request referred to United States Citizenship and Immigration Services ("USCIS") for a direct response to Plaintiffs. Pursuant to an order dated July 22, 2022, the Court established a schedule for briefing of summary judgment that set the deadline for Defendants' motion as October 25, 2022.

For reasons set forth below, Defendants request a 90-day extension of that deadline, to and including, January 25, 2023, and a corresponding adjustment of the remaining deadlines in the briefing schedule. Pursuant to Local Rule 7(m), the parties have conferred on the requested extension and Plaintiffs, through counsel, have advised that they consent to a 60-day extension but oppose the requested 90-day extension. Defendants also request that ICE be permitted to utilize a representative sample *Vaughn* Index as described below given Plaintiffs' refusal to narrow the documents in dispute and the volume of pages (over 3,000) that accordingly would

otherwise need to be included on the *Vaughn* Index.  Plaintiffs have stated they oppose the request for a representative sample.  There is good cause for the requested extension and request for use of a representative sample.

    1.  The FOIA request at issue in this lawsuit was submitted by Plaintiff Kathy Kiely, a Press Freedom Fellow at the National Press Club Journalism Institute ("NPCJI"), on behalf of herself and NPCJI.  (Compl. ¶ 34)   The request was received by ICE on June 7, 2018 and the requester identified two categories of records sought.  The first category concerned "[a]ll records . . . since January 1, 2017, that mention Emilio Gutierrez-Soto (aka Emilio Gutierrez Soto) or his son, Oscar Gutierrez-Soto (aka Oscar Gutierrez Soto)" and the second category of requested records concerned "[a]ll records of ICE facilities and/or personnel in El Paso, Texas, including but not limited to communications (e.g.. emails, memos, text messages) and any mechanisms used to limit or block phone calls from detainees at ICE's El Paso facilities, since March 1, 2018, that mention or contain any of the following [names of certain specified persons or entities]."  (Ex.1 to Complaint).

    2.  In a letter dated June 14, 2018, ICE notified the requester that a portion of the requested records fell within the purview of USCIS, a separate component of the Department of Homeland Security, that is not named as a defendant in this action.  Pursuant to the June 14, 2018 letter, ICE notified the requester that, as to those records, it was referring Plaintiffs' FOIA request to USCIS for processing and direct response.   Plaintiffs provided Privacy Act waivers to ICE with the request and, during the course of the litigation and after the release of redacted records already had begun, Plaintiffs provided ICE with more comprehensive Privacy Act waivers that allowed ICE to provide additional information in releases on a going forward basis.

3. ICE currently estimates that it processed 11,803 pages in response to the FOIA request. Of that amount, ICE currently estimates that approximately 174 pages of ICE records were withheld in full and approximately 3,000 pages of ICE records were withheld in part. In addition, ICE processed and released in part two similarly redacted voluminous excel spreadsheets that track congressional inquiries made to the ICE Office of Congressional Relations. One of the excel spreadsheets contains approximately 9,700 rows and five columns of information and the other contains approximately 10,500 rows and 14 columns of information. Although both spreadsheets were treated as responsive to the request, only a small subset of the rows in each of the excel spreadsheets actually reference one or both of the individuals identified in the request. The redactions on the spreadsheets generally apply to the same types of information. Finally, ICE processed approximately 217 pages of records that involved consultations with other agencies.

4. ICE withheld information under Exemptions 5, 6, 7(C), and 7(E). Based on ICE's assessment to date, the processed records withheld in part consist predominantly of documents related to the immigration relief sought by the individuals (including regarding immigration proceedings), email communications referencing the individuals' immigration proceedings, health and status, and database records concerning the individuals. Accordingly, the proposed sample is calculated to provide a fair representation of the types of documents at issue and types of withholdings claimed.

5. ICE, through counsel, has repeatedly engaged with Plaintiff in an attempt to narrow the scope of records for the *Vaughn* Index, including requesting that Plaintiffs identify specific pages of records in dispute, but counsel for Plaintiffs declined to do so and advised that all withholdings remain at issue with the exception of (1) social security numbers, (2) dates of birth,

(3) home addresses, (4) personal phone numbers (but only insofar as they pertain to persons for whom Plaintiffs have not provided a Privacy Act waiver).[1] This concession, however, does not materially reduce the burden of creating the *Vaughn* Index except with respect to any information about other individuals contained in the two excel spreadsheets.

6. Due to the volume of records that otherwise would need to be addressed on a *Vaughn* Index, ICE requests leave to utilize a representative sample as follows:

- ICE would address on its *Vaughn* Index all of the 174 pages of ICE records withheld in full;
- As to the approximately 3,000 pages of ICE records released in part, ICE would include on the *Vaughn* Index every 15th page, encompassing approximately 200 pages of the released in part pages;
- As to the 217 pages of consult records, ICE would include on the *Vaughn* Index every 15th page, encompassing approximately 14 pages;
- ICE would address in the *Vaughn* Index the specific rows in each of the two spreadsheets that actually reference one or both of the individuals.

In total, ICE proposes to address in its *Vaughn* Index approximately 388 pages of records as well as a portion of the two excel spreadsheets.

7. Representative sampling is a well-recognized procedure "to test an agency's FOIA exemption claims when a large number of documents are involved." *Bonner v. Dep't of State*, 928 F.2d 1148, 1151(D.C. Cir. 1991); *see also Clemente v. FBI*, 854 F. Supp. 2d 49, 57

---

[1] USCIS withheld in part information from approximately 140 pages and plans to address the withholdings on each of those pages to the extent at issue on its own *Vaughn* index at the time summary judgment is filed (Plaintiffs have agreed not to challenge the same categories of withholdings with respect to USCIS's response as described above).

(D.D.C. 2012) (same). Here, ICE is proposing to address all 174 pages withheld in full on its *Vaughn* Index and then to utilize a representative sample of pages withheld in part. By sampling every 15th page of the over 3,000 pages withheld in part, ICE proposes to address the withholdings on over 200 additional pages.

8. Recognizing that "there is no requirement that every type of exemption invoked by Defendant must be covered in the Index," *Mullen v. United States Army Crim. Investigation Command*, No. 10-cv-262, 2011 U.S. Dist. LEXIS 134657 at *23 (E.D. Va. Nov. 22, 2011), courts have approved representative sampling that results in a similar number of pages specifically addressed on the *Vaughn* Index. *See id.* (approving a sample of every 84th page out of 39,571 responsive pages); *see also Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1490 (D.C. Cir. 1984) (approving sampling of every 200th page out of 60,000 pages at issue); *Meeropol v. Meese*, 790 F.2d 942, 956-57 (D.C. Cir. 1986) (allowing sampling of every 100th document when approximately 20,000 documents were at issue); *Bonner*, 928 F.2d at 1151(approving the use of representative sampling in a case where the parties agreed to Vaughn 63 documents out of 1,776 at issue); *Allen v. Dep't of Def.*, 658 F. Supp. 15, 23 (D.D.C. 1986) (approving sample involving 350 documents out of 5,000 at issue).

9. Accordingly, ICE requests that the Court approve the representative sampling that it has proposed. To afford ICE time to complete its *Vaughn* Index utilizing the above-referenced sampling, ICE requests that the existing summary judgment schedule be adjusted 90 days such that the new dates would be as follows:

- Defendants' Motion for Summary Judgment shall be due on or before January 25, 2023;
- Plaintiffs' Opposition and Cross-Motion for Summary Judgment shall be

> due on or before March 9, 2023
>
> - Defendants' Reply and Opposition shall be due on or before April 10, 2023
>
> - Plaintiffs' Reply shall be due on or before May 3, 2023

The requested extension also is needed to allow ICE time to re-process pages that had been processed prior to Plaintiffs submitting more comprehensive Privacy Act waivers. As stated above, a portion of the records processed by ICE were processed prior to receipt of the more comprehensive Privacy Act waivers and consequently contain additional redactions that did not appear on documents containing similar information that were processed after those more comprehensive waivers had been received. Counsel for Plaintiffs confirmed by email dated October 21, 2022, that Plaintiff would like the earlier processed records re-processed to account for the more comprehensive Privacy Act waivers.

10. For these reasons, and due to other demands on the time of the ICE attorney preparing the *Vaughn* Index, which includes approximately 15 other matters in litigation and other demands as a result of recent departures within her division, Defendants request the above adjustment to the summary judgment briefing schedule. As stated above, Plaintiffs have consented only to an adjustment of the briefing schedule by 60 days, which would make Defendants' deadline December 24, 2022. That date not only falls during the holiday season, but it fails to account for the time required by agency counsel to complete the *Vaughn* Index and re-process the referenced records.

11. A proposed order is attached.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. BAR #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: ____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
United States Attorney's Office
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov