# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**NATIONAL PRESS CLUB JOURNALISM
INSTITUTE, et al.**

　　　　　Plaintiffs,

v.

**UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.**

　　　　　Defendants.

Civil Action No. 18-cv-2932 (RC)

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
## PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Katie Townsend
D.C. Bar No. 1026115
Adam A. Marshall
D.C. Bar No. 1029423
Shawn Musgrave
D.C. Bar No. 90002165
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone:  202.795.9300
Facsimile:  202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: smusgrave@rcfp.org

Charles D. Tobin
D.C. Bar No. 455593
BALLARD SPAHR LLP
1909 K Street, NW 12th Floor
Washington, D.C. 20006-1157
Phone: 202.661.2200
Email: tobinc@ballardspahr.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ..................................................................................................... 1

FACTS AND BACKGROUND .................................................................................. 3

   I.   The Plaintiffs. ................................................................................................ 3

   II.  ICE's Detention of Emilio and Oscar Gutiérrez-Soto and Deportation
       Proceedings. .................................................................................................. 4

   III. Plaintiffs' FOIA Request. .............................................................................. 6

LEGAL STANDARDS .............................................................................................. 7

ARGUMENT ............................................................................................................. 9

   I.   Defendants are not entitled to summary judgment as to the sufficiency of their
       search for text messages and records of mechanisms used to limit or block phone
       calls. .............................................................................................................. 9

        A.  ICE is not entitled to summary judgment as to its search for text messages. ............. 9

            i.   ICE has failed to show it searched for responsive text messages. ...................... 10

            ii.  ICE has failed to explain its search methodology for text messages. ................. 11

        B.  ICE is not entitled to summary judgment as to its search for records of
            mechanisms used to limit or block phone calls. ......................................................... 14

   II.  ICE's declaration and *Vaughn* index are insufficient to justify its withholdings. ............. 17

        A.  The Pineiro Declaration is manifestly deficient. ....................................................... 18

        B.  ICE's *Vaughn* index is deficient ............................................................................... 19

   III. Defendants fail to demonstrate that withheld material is exempt. ................................... 22

        A.  Defendants have failed to justify withholdings under Exemption 5 and have
            improperly withheld records under that Exemption. ................................................... 23

            i.   Defendants improperly withheld a record under Exemption 5 that does
               not qualify as inter- or intra-agency memoranda. ................................................. 23

        ii.   The Pineiro Declaration and ICE's *Vaughn* index are insufficient to show that the deliberative process privilege applies. ...................................23

              a.   Defendants fail to show that withheld records are "deliberative." ..............24

              b.   Defendants fail to show that withheld records are "predecisional."...........27

        iii.   The Pineiro Declaration and ICE's *Vaughn* index are insufficient to support Defendants' withholdings on the basis of the attorney-client privilege.......................................................................................................29

    B.   Defendants fail to justify withholdings under Exemptions 6 and 7(C)........................31

        i.   Defendants fail to demonstrate that Exemption 7 applies to withheld records. .....................................................................................................32

        ii.   Defendants fail to justify withholdings under Exemptions 6 and 7(C)..............34

              a.   Defendants fail to identify the privacy interests at stake and cannot do so with respect to high-level ICE officials whose identities are known to the public.............................................................................34

              b.   Defendants failed to balance the weighty public interests in disclosure. ...............................................................................................38

IV.   Defendants fail to satisfy the "foreseeable harm" standard with respect to their deliberative process privilege withholdings. ......................................................................39

V.   Defendants' summary judgment motion should be denied as moot with respect to records and information they previously released to Plaintiffs. ........................................42

CONCLUSION ............................................................................................................................44

## TABLE OF AUTHORITIES

**Cases**

*100Reporters LLC v. Dep't of Justice*,
248 F. Supp. 3d 115 (D.D.C. 2017)........................................................33, 35, 36, 38

*Access Reps. v. Dep't of Justice*,
926 F.2d 1192 (D.C. Cir. 1991)........................................................26

*Advancement Project v. Dep't of Homeland Sec.*,
549 F. Supp. 3d 128 (D.D.C. 2021)........................................................24

*Aguiar v. Drug Enf't Admin.*,
865 F.3d 730 (D.C. Cir. 2017)........................................................10, 11

*Alvarez v. Smith*,
558 U.S. 87 (2009) ........................................................42

*Am. C.L. Union v. Dep't of Justice*,
655 F.3d 1 (D.C. Cir. 2011)........................................................34

*Am. Immigr. Council v. Dep't of Homeland Sec.*,
950 F. Supp. 2d 221 (D.D.C. 2013)........................................................34

*Am. Immigr. Council v. Customs & Border Patrol*,
590 F. Supp. 3d 306 (D.D.C. 2022),
*reconsideration denied*,
No. CV 19-2965 (RC), 2023 WL 2755412 (D.D.C. Apr. 3, 2023)........................25, 26, 41, 42

*Am. Oversight v. U.S. Gen. Servs. Admin.*,
486 F. Supp. 3d 306 (D.D.C. 2020)........................................................11

*Campbell v. Dep't of Justice*,
164 F.3d 20 (D.C. Cir. 1998),
*as amended* (Mar. 3, 1999)........................................................8, 30

*Cause of Action Inst. v. Dep't of Justice*,
330 F. Supp. 3d 336 (D.D.C. 2018)........................................................30

*Church of Scientology of Cal., Inc. v. Turner*,
662 F.2d 784 (D.C. Cir. 1980)........................................................22

*Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*,
746 F.3d 1082 (D.C. Cir. 2014)........................................................39

*Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*,
    840 F. Supp. 2d 226 (D.D.C. 2012)........................................................................36

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980)......................................................................*passim*

*Ctr. for Biological Diversity v. Env't Prot. Agency*,
    279 F. Supp. 3d 121 (D.D.C. 2017)........................................................................11

*Ctr. for Investigative Reporting v. Customs & Border Prot.*,
    436 F. Supp. 3d 90 (D.D.C. 2019)..........................................................8, 26, 27, 40

*Cuban v. Sec. & Exch. Comm'n*,
    744 F. Supp. 2d 60 (D.D.C. 2010)........................................................................30

*DeBrew v. Atwood*,
    792 F.3d 118 (D.C. Cir. 2015)........................................................................10, 11

*Dep't of Air Force v. Rose*,
    425 U.S. 352 (1976) ..............................................................................................8

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
    489 U.S. 749 (1989) ..........................................................................................8, 38

*Dep't of Justice v. Tax Analysts*,
    492 U.S. 136 (1989) ..............................................................................................9

*Evans v. Fed. Bureau of Prisons*,
    951 F.3d 578 (D.C. Cir. 2020)........................................................................15, 16

*Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
    762 F. Supp. 2d 123 (D.D.C. 2011)......................................................................24

*Gutierrez-Soto v. Sessions*,
    317 F. Supp. 3d 917 (W.D. Tex. 2018) ......................................................2, 5, 6, 39

*Hall v. Dep't of Justice*,
    552 F. Supp. 2d 23 (D.D.C. 2008)........................................................................28

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    243 F. Supp. 3d 155 (D.D.C. 2017)......................................................................22

*Heartland All. for Hum. Needs & Hum. Rts. v. Dep't of Homeland Sec.*,
    291 F. Supp. 3d 69 (D.D.C. 2018)........................................................................24

*Heily v. Dep't of Defense*,
   896 F. Supp. 2d 25 (D.D.C. 2012),
   *aff'd*, No. 13-5055, 2013 WL 5975876 (D.C. Cir. Oct. 16, 2013) ...........................................42

*Hemenway v. Hughes*,
   601 F. Supp. 1002 (D.D.C. 1985)..................................................................................14, 15

*Hunton & Williams LLP v. Env't Prot. Agency*,
   248 F. Supp. 3d 220 (D.D.C. 2017)..............................................................................26, 27

*In re Kellogg Brown & Root, Inc.*,
   756 F.3d 754 (D.C. Cir. 2014)..............................................................................................30

*Inst. for Justice v. Internal Revenue Serv.*,
   941 F.3d 567 (D.C. Cir. 2019)...........................................................................14, 15, 16, 17

*Jud. Watch, Inc. v. Dep't of Homeland Sec.*,
   841 F. Supp. 2d 142 (D.D.C. 2012)......................................................................................30

*Jud. Watch, Inc. v. Dep't of Justice*,
   20 F.4th 49 (D.C. Cir. 2021)..................................................................................................27

*King v. Dep't of Justice*,
   830 F.2d 210 (D.C. Cir. 1987)...........................................................................17, 18, 19, 20

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009)................................................................................................9

*Machado Amadis v. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020)..............................................................................................40

*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977)........................................................................................17, 23

*Miller v. Dep't of Justice*,
   872 F. Supp. 2d 12 (D.D.C. 2012)........................................................................................35

*Morley v. Cent. Intel. Agency*,
   508 F.3d 1108 (D.C. Cir. 2007)......................................................................................10, 11

*Muttitt v. Dep't of State*,
   926 F. Supp. 2d 284 (D.D.C. 2013)......................................................................................31

*Nat'l Archives & Recs. Admin. v. Favish*,
   541 U.S. 157 (2004) ..............................................................................................................39

*Nation Mag. v. U.S. Customs Serv.*,
    71 F.3d 885 (D.C. Cir. 1995)..........................................................................................14

*New Orleans Workers' Ctr. for Racial Just. v. Immigr. & Customs Enf't*,
    373 F. Supp. 3d 16 (D.D.C. 2019)...........................................................................*passim*

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990).................................................................................10, 12, 14

*Oglesby v. Dep't of Army*,
    79 F.3d 1172 (D.C. Cir. 1996)..........................................................................................18, 22

*Perez-Mendez v. Price*,
    No. EP-17-CV-00089-DCG, 2017 WL 8181557 (W.D. Tex. Aug. 8, 2017)...........................38

*Petroleum Info. Corp. v. Dep't of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992)........................................................................................26

*Pratt v. Webster*,
    673 F.2d 408 (D.C. Cir. 1982)..........................................................................................33

*Prison Legal News v. Samuels*,
    787 F.3d 1142 (D.C. Cir. 2015)......................................................................................34, 35

*Project on Gov't Oversight, Inc. v. Dep't of Homeland Sec.*,
    No. 1:18-CV-2051-RCL, 2023 WL 2139380 (D.D.C. Feb. 21, 2023)....................................41

*Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
    877 F.3d 399 (D.C. Cir. 2017).......................................................................................10, 12

*Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
    3 F.4th 350 (D.C. Cir. 2021)..............................................................................*passim*

*Reporters Comm. for Freedom of the Press v. Dep't of Justice*,
    No. CV 19-2847 (TFH), 2021 WL 5179237 (D.D.C. Nov. 8, 2021)...............................10, 11

*Roseberry-Andrews v. Dep't of Homeland Sec.*,
    299 F. Supp. 3d 9 (D.D.C. 2018)......................................................................................32

*Senate of P.R. v. Dep't of Justice*,
    823 F.2d 574 (D.C. Cir. 1987).......................................................................................27, 28

*Shapiro v. Cent. Intel. Agency*,
    247 F. Supp. 3d 53 (D.D.C. 2017).....................................................................................22

*Shapiro v. Dep't of Justice*,
40 F.4th 609 (D.C. Cir. 2022),
*cert. denied*, 143 S. Ct. 526 (2022) ...................................................................8, 9

*Tokar v. Dep't of Justice*,
304 F. Supp. 3d 81 (D.D.C. 2018) ...........................................................................36

*Truitt v. Dep't of State*,
897 F.2d 540 (D.C. Cir. 1990) ..........................................................................15, 16

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
141 S. Ct. 777 (2021) ...............................................................................................24

*Weisberg v. Dep't of Justice*,
627 F.2d 365 (D.C. Cir. 1980) ................................................................11, 12, 14

*Weisberg v. Dep't of Justice*,
705 F.2d 1344 (D.C. Cir. 1983) ...........................................................................8, 9

*Wilderness Soc'y v. Dep't of Interior*,
344 F. Supp. 2d 1 (D.D.C. 2004) ............................................................................17

**Statutes**

5 U.S.C. § 552(a)(3) ...................................................................................................9, 14

5 U.S.C. § 552(a)(4) ...................................................................................................8, 23

5 U.S.C. § 552(a)(8) .....................................................................................3, 8, 40, 43

5 U.S.C. § 552(b)(5) ........................................................................................................23

5 U.S.C. § 552(b)(6) ....................................................................................................3, 31

5 U.S.C. § 552(b)(7) ...............................................................................................3, 31, 32

FOIA Improvement Act of 2016,
Pub. L. No. 114-185, 130 Stat. 538 (2016) ...............................................................40

Freedom of Information Act,
5 U.S.C. § 552 ..................................................................................................................2

**Other Authorities**

Brief of Amici Curiae Journalists' Organizations in Support of Petitioners,
*Gutierrez-Soto v. Sessions*, No. 3:18-cv-00071 (W.D. Tex. Apr. 9, 2018), ECF No. 11............5

Comm. to Protect Journalists, *CPJ urges U.S. immigration authorities to grant parole to Emilio Gutiérrez Soto* (Feb. 6, 2018),
https://cpj.org/2018/02/cpj-urges-us-immigration-authorities-to-grant-paro/. ...........................1

Editorial Board, *Opinion: A Mexican journalist's life hangs in the balance*,
Wash. Post (Dec. 11, 2017),
https://www.washingtonpost.com/opinions/a-mexican-journalists-life-hangs-in-the-balance/2017/12/11/9783ab1a-deac-11e7-8679-a9728984779c_story.html ..............................1

H.R. Rep. No. 114-391 (2016) .......................................................................................40

Jason Rezaian, *Opinion: U.S. immigration authorities are failing this award-winning Mexican journalist*, Wash. Post (Mar. 12, 2019),
https://www.washingtonpost.com/opinions/2019/03/12/us-immigration-authorities-are-failing-this-award-winning-mexican-journalist ...........................................................1

Julián Aguilar, *Mexican reporter and son released from immigration detention in Texas*, The Texas Tribune (Jul. 26, 2018), https://perma.cc/KVV5-3CEA ...................................................6

Julie Schoo, *Press Freedom Award honors White House and Mexican reporters*,
Nat'l Press Club (Aug. 16, 2017),
https://www.press.org/newsroom/press-freedom-award-honors-white-house-and-mexican-reporters ......................................................................................................2

Kate Linthicum, *Journalists are fleeing for their lives in Mexico. There are few havens*,
L.A. Times (Feb. 5, 2018),
https://perma.cc/U7V5-HA9J ......................................................................................4

Order Granting Limited Discovery,
*Gutierrez-Soto v. Sessions*, No. 3:18-cv-00071 (W.D. Tex. July 20, 2018), ECF No. 46 .........6

Steve Coll, *After Ten Years, a Journalist Who Fled Mexico Faces Deportation*,
New Yorker (May 3, 2018),
https://www.newyorker.com/news/daily-comment/after-ten-years-a-journalist-who-fled-mexico-faces-deportation ...............................................................................1, 2

## <u>INTRODUCTION</u>

In 2008, Mexican journalist Emilio Gutiérrez-Soto ("Gutiérrez") and his son, Oscar, sought

asylum in the United States, fleeing threats from the Mexican military that stemmed from

Gutiérrez's reporting.[1]  As the *Washington Post* Editorial Board later recounted, Gutiérrez was

forced to flee:

> after writing critical stories about abuses committed against civilians by the
> Mexican army in prosecuting its war on drugs in Chihuahua, then Mexico's most
> violent state. Mr. Gutierrez's hurried departure was prompted by the news,
> conveyed to him by a friend with contacts in the security forces, that a military
> officer had ordered him killed.[2]

And as *Washington Post* journalist Jason Rezaian wrote in 2019:

> At the time, Gutiérrez faced a brutal dilemma: He could either continue reporting
> on drug cartels and corrupt Mexican military officials and live under the shadow of
> mounting death threats, or he could do what so many of his countrymen before him
> had done in seeking out a safer future for his family across the border.[3]

Gutiérrez and his son presented themselves at a port of entry, requested asylum, and resettled in

New Mexico as their asylum application was adjudicated.[4]  In July 2017, an immigration judge

denied their asylum claims, which Gutiérrez and his son appealed to the Board of Immigration

---

[1]     *See, e.g.*, Comm. to Protect Journalists, *CPJ urges U.S. immigration authorities to grant parole to Emilio Gutiérrez Soto* (Feb. 6, 2018), https://cpj.org/2018/02/cpj-urges-us-immigration-authorities-to-grant-paro/.

[2]     Editorial Board, *Opinion: A Mexican journalist's life hangs in the balance*, Wash. Post (Dec. 11, 2017), https://www.washingtonpost.com/opinions/a-mexican-journalists-life-hangs-in-the-balance/2017/12/11/9783ab1a-deac-11e7-8679-a9728984779c_story.html.

[3]     Jason Rezaian, *Opinion: U.S. immigration authorities are failing this award-winning Mexican journalist*, Wash. Post (Mar. 12, 2019), https://www.washingtonpost.com/opinions/2019/03/12/us-immigration-authorities-are-failing-this-award-winning-mexican-journalist.

[4]     Steve Coll, *After Ten Years, a Journalist Who Fled Mexico Faces Deportation*, New Yorker (May 3, 2018), https://www.newyorker.com/news/daily-comment/after-ten-years-a-journalist-who-fled-mexico-faces-deportation.

Appeals ("BIA").[5]

In October 2017, Gutiérrez accepted a press freedom award from the National Press Club on behalf of the press corps of Mexico for bravery and public service in reporting on corruption and drug cartels.[6]  In his acceptance remarks, Gutiérrez "criticized ICE and the government[.]" *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 933 (W.D. Tex. 2018).  Weeks later, Defendant Immigration and Customs Enforcement ("ICE") detained and attempted to deport both Gutiérrez and his son.  *Id.* at 922.  After they filed a *habeas* challenge to their detention, a federal district court found that the "temporal proximity between [Gutiérrez's] criticism of ICE and the revocation of [his] parole," along with other evidence, supported a potential inference that "ICE officials did not approve of the negative press that [Gutiérrez and his son] were generating."  *Id.* at 933.

This case concerns a request submitted by Plaintiffs National Press Club Journalism Institute ("NPCJI") and journalist Kathy Kiely under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), for records related to ICE's detention and treatment of Gutiérrez. Notwithstanding the immense public interest in these records, and the more than four years that have passed since Plaintiffs' FOIA request was submitted, Defendants have yet to satisfy their obligations under the Act.  Indeed, despite moving for summary judgment, Defendants fail to satisfy even minimum requirements under FOIA, including to demonstrate that they conducted an adequate search for responsive records.

Further, many of Defendants' extensive withholdings are plainly improper.  For example, Defendants invoke FOIA Exemption 5, citing the deliberative process privilege, but they have

---

[5]      *Id.*

[6]      Julie Schoo, *Press Freedom Award honors White House and Mexican reporters*, Nat'l Press Club (Aug. 16, 2017), https://www.press.org/newsroom/press-freedom-award-honors-white-house-and-mexican-reporters.

failed to demonstrate that this exemption applies in the first place, and even if the exemption does

apply, they also have not satisfied the requisite foreseeable harm standard.  Defendants also fail to

support their categorical withholding of virtually all government employees' names under FOIA

Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C), including high-ranking officials whose

identities are already widely known.  As to many of these withholdings, Defendants also fail to

demonstrate compliance with FOIA's foreseeable harm provision.  *Id*. § 552(a)(8)(A)(i).

Accordingly, as detailed herein, the Court should deny Defendants' motion and grant

partial summary judgment in Plaintiffs' favor.[7]

## FACTS AND BACKGROUND

### I.    The Plaintiffs.

Plaintiff National Press Club Journalism Institute ("NPCJI") is a nonprofit affiliate of the

National Press Club and is located in Washington, D.C.  Compl., ECF No. 1, ¶ 6.  Its mission is to

promote a transparent global society through an independent and free press and to equip journalists

with modern tools to inspire civic engagement and inform the public.  *Id.*

Plaintiff Kathy Kiely is a veteran reporter with more than 40 years of experience covering

Washington, D.C., the White House, and Congress for numerous outlets, including *USA TODAY*,

the *Houston Post*, and the *Arkansas Democrat-Gazette*.  Compl. ¶ 7.  She is the former Press

Freedom Fellow at NPCJI.  *Id.*  Currently, she is the Lee Hills Chair in Free-Press Studies at the

---

[7]      Plaintiffs do not challenge redactions to the following four categories of information,
insofar as they pertain to persons for which Plaintiffs have not provided Defendants a privacy
waiver: (1) social security numbers, (2) dates of birth, (3) home addresses, and (4) personal phone
numbers.  Further, Plaintiffs do not contest (5) USCIS's withholdings, *see* ECF No. 52-30 and
ECF No. 52-31; (6) ICE's withholdings under the work product privilege of Exemption 5; (7)
ICE's withholdings of phone numbers, or signatures under Exemptions 6 and 7(C); or (8) ICE's
withholdings under FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).

Missouri School of Journalism.  *Id.*

**II.      ICE's Detention of Emilio and Oscar Gutiérrez-Soto and Deportation Proceedings.**

Emilio Gutiérrez-Soto ("Gutiérrez") is a Mexican journalist.  Beginning in 2005, after Gutiérrez reported on corruption and abuses by the Mexican military, he was threatened by a Mexican general and soldiers, and his house was ransacked by the military.  *See, e.g.*, Kate Linthicum, *Journalists are fleeing for their lives in Mexico. There are few havens*, L.A. Times (Feb. 5, 2018), https://perma.cc/U7V5-HA9J.

In June 2008, after receiving a tip that the military wanted him dead, Gutiérrez fled Mexico with his son, Oscar, and sought asylum in the United States.  Marshall Decl. Ex. 8.  After several months in ICE custody in El Paso, Gutiérrez was granted humanitarian parole in January 2009. Marshall Decl. Ex. 4.  He and Oscar settled in New Mexico, where they lived for nine years while their request for asylum was being processed.  Marshall Decl. Ex. 8.  In July 2017, an immigration judge denied Gutiérrez's and his son's asylum claims and ordered that they be deported back to Mexico.  Marshall Decl. Ex. 4.  Gutiérrez appealed the decision to the Board of Immigration Appeals ("BIA").  *Id.*

Approximately one month later, in August 2017, the National Press Club announced that it was honoring Gutiérrez with the John Aubuchon Press Freedom Award on behalf of Mexico's journalists.  Marshall Decl. Exs. 10–11.  At the October 2017 awards ceremony, Gutiérrez publicly "criticized ICE and the government[.]"  *Gutierrez-Soto*, 317 F. Supp. 3d at 933.  Shortly thereafter, on December 7, ICE arrested Gutiérrez and his son and attempted to deport them.  Marshall Decl. Ex. 4.  That same day, however, the BIA granted an emergency stay of removal.  *Id.*  ICE put Gutiérrez and his son in detention in El Paso.  *Id.*

Over the next several months, ICE's Acting Field Office Director ("FOD") in El Paso,

William P. Joyce ("Joyce"), denied requests that Gutiérrez be released from custody pending resolution of the BIA appeal.  Marshall Decl. Exs. 73–75.  During this time, multiple members of Congress inquired into Gutiérrez's detention, including then-Representative Beto O'Rourke, then-Representative Steve Pearce, Senator Martin Heinrich, and then-Senator Tom Udall.  Pls.' SMF ¶ 35; Marshall Decl. Exs. 14, 16.  Free press advocates, including Plaintiffs, the Committee to Protect Journalists, and PEN America called on ICE to release Gutiérrez, as did the bishop of El Paso.  Pls.' SMF ¶¶ 36–37; Marshall Decl. Exs. 9, 12–13.  Even after he was awarded a prestigious journalism fellowship by the University of Michigan in April 2018, ICE kept Gutiérrez in custody. Marshall Decl. Exs. 4, 72.

In March 2018, Gutiérrez and his son filed *habeas* petitions in the U.S. District Court for the Western District of Texas.  *Gutierrez-Soto*, 317 F. Supp. 3d at 922.  The petitions named Joyce in his official capacity as ICE's Acting FOD in El Paso, along with other high-ranking government officials.  *Id.*  The petition alleged Gutiérrez was targeted because of his criticism of ICE and the U.S. government.  *Id.* at 934.  A coalition of media organizations, including Plaintiff NPCJI, submitted an amicus brief in support of Gutiérrez.  *See Gutierrez-Soto v. Sessions*, No. 3:18-cv-00071 (W.D. Tex. Apr. 9, 2018), ECF No. 11.

In July 2018, the district court denied in part the government's motion to dismiss the petitions filed by Gutiérrez and his son, concluding:

> Petitioners have offered evidence that allows for an inference that they were targeted before their asylum case was denied and ICE officials did not approve of the negative press that Petitioners were generating. Drawing these inferences in favor of Petitioners, the nonmoving party, there is support for Petitioners' claim that Respondents retaliated against them for asserting their free press rights.

*Gutierrez-Soto*, 317 F. Supp. 3d at 933.  The district court also held that Gutiérrez and his son proffered sufficient evidence in support of their free speech claims.  *Id.* at 934.  The district court

granted limited discovery, ordering the government to turn over "all documents . . . related to Petitioners' detention," including correspondence within the Texas ICE office as well as correspondence between that office and officials at DHS and the Department of Justice. *Gutierrez-Soto v. Sessions*, No. 3:18-cv-00071 (W.D. Tex. July 20, 2018), ECF No. 46.  The government had until July 27, 2018, to produce these documents.  *Id.*  Instead of producing any records, on July 26, 2018, the day before the court's deadline, ICE released Gutiérrez and his son from custody. *See, e.g.*, Julián Aguilar, *Mexican reporter and son released from immigration detention in Texas*, The Texas Tribune (Jul. 26, 2018), https://perma.cc/KVV5-3CEA.

## III.   Plaintiffs' FOIA Request.

On May 18, 2018, Plaintiffs submitted a FOIA request (the "Request") to ICE for:

> (1)  All records, including but not limited to emails, memos, text messages, and other communications, since January 1, 2017, that mention Emilio Gutierrez-Soto (aka Emilio Gutierrez Soto) or his son, Oscar Gutierrez-Soto (aka Oscar Gutierrez Soto);

> (2) All records of ICE facilities and/or personnel in El Paso, Texas, including but not limited to communications (e.g., emails, memos, text messages) and any mechanisms used to limit or block phone calls from detainees at ICE's El Paso facilities, since March 1, 2018, that mention or contain any of the following:
> a. [redacted phone number];
> b. [redacted phone number];
> c. Eduardo Beckett
> d. Beckett Law Firm.

Pls.' SMF ¶ 13; Marshall Decl. Ex. 1.  The Request attached signed privacy waivers from Gutiérrez, his son, Oscar, and their attorney, Eduardo Beckett ("Beckett").  Pls.' SMF ¶ 14; Marshall Decl. Ex. 1.

On June 14, 2018, ICE sent a letter acknowledging receipt of the Request and referring a portion of the Request to U.S. Citizenship and Immigration Services ("USCIS").  Pls.' SMF ¶¶ 15–16.  On June 21, USCIS sent a letter acknowledging receipt of the referred portion of the

Request.  Pls.' SMF ¶ 17.

On July 17, 2018, having received no further communications or records from ICE or USCIS, Plaintiffs' counsel submitted an administrative appeal to both ICE and USCIS (the "Administrative Appeal").  Pls.' SMF ¶ 18; Marshall Decl. Ex. 2.  On August 22, ICE sent Plaintiffs a letter remanding the Request for further processing.  Pls.' SMF ¶ 19.  On September 17, USCIS sent Plaintiffs a letter stating the Request was "not subject to administrative appeal at this time[.]"  Pls.' SMF ¶ 20.

On December 13, 2018, having received no records from Defendants in response to the Request, Plaintiffs filed the above-captioned litigation.  Compl.  At Defendants' request, Plaintiffs provided additional privacy waivers for Gutiérrez and his son.  Pls.' SMF ¶ 23; Marshall Decl. Ex. 3.  Thereafter, ICE and USCIS produced records to Plaintiffs.  Defs.' SMF ¶¶ 9–10.

Following two extensions of their deadline and denial of their request to file a sample *Vaughn* index,[8] on May 3, 2023, Defendants moved for summary judgment.  *See* ECF No. 52.

## LEGAL STANDARDS

FOIA was enacted to create an enforceable right of "access to official information long shielded unnecessarily from public view."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  As the Supreme Court has explained, the "core purpose" of the Act is to increase "public understanding of the operations or activities of the government."  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989) (citation omitted).

---

[8]    *See* Minute Order dated January 5, 2023 (granting Defendants' partially opposed extension motion and denying Defendants' motion for leave to file a sample *Vaughn* index); Minute Order dated February 22, 2023 (granting Defendants' opposed extension motion and ordering Defendants to produce their *Vaughn* indices on a rolling basis).

Summary judgment may be entered in favor of an agency in a FOIA action only if the agency "show[s] that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983) (citation omitted); Fed. R. Civ. P. 56(a).  To meet that burden, the agency must establish that it has fully discharged its statutory obligations, including that any withholdings are proper under one of FOIA's enumerated exemptions.  *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999); 5 U.S.C. § 552(a)(4)(B).  In addition, an agency also must demonstrate that it is "reasonably foresee[able]" that "disclosure would harm an interest protected by" the cited exemption, or that disclosure is prohibited by law, 5 U.S.C. § 552(a)(8)(A)(i)—an "independent and meaningful burden" the agency must satisfy, *Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting *Ctr. for Investigative Reporting v. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019)).

"To prevail on summary judgment, an agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested[.]" *Shapiro v. Dep't of Justice*, 40 F.4th 609, 612–13 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 526 (2022) (citation omitted) (cleaned up).  An agency can meet its burden "by submitting a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* (citation omitted) (cleaned up).  With respect to an agency's withholdings, "[c]onsistent with the Act's goal of broad disclosure," FOIA's exemptions must be narrowly construed.  *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).  An agency's affidavits in support of its withholdings must "describe the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).

## **ARGUMENT**

## I.   **Defendants are not entitled to summary judgment as to the sufficiency of their search for text messages and records of mechanisms used to limit or block phone calls.**

An "agency must show beyond material doubt is that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. Here, Defendants failed to satisfy this standard in two ways: first, with respect to text messages responsive to the first portion of the Request; second, with respect to the entire second portion of the Request.

### A.   **ICE is not entitled to summary judgment as to its search for text messages.**

FOIA defines "search" as "to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D). To be entitled to summary judgment, an agency must provide "[a] reasonably detailed affidavit, setting forth . . . the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched[.]" *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). A declaration providing no "indication of what each [component's] search specifically yielded" is inadequate. *Morley v. Cent. Intel. Agency*, 508 F.3d 1108, 1122 (D.C. Cir. 2007). Similarly, "an affidavit containing no information about the search strategies" the agency deployed "is inadequate to carry the government's summary-judgment burden." *Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 403 (D.C. Cir. 2017) (citation omitted) (cleaned up).

Here, Defendants produced no text messages in response to Plaintiffs' FOIA Request.  Pls.'
SMF ¶ 31.  On this record, however, it is impossible for Plaintiffs or the Court to determine whether
that is because no responsive text messages exist or because no searches for text messages were
actually conducted.  Further, even if Defendants conducted a search for text messages, they failed
to adequately describe their search strategies.

        i.       <u>ICE has failed to show it searched for responsive text messages.</u>

Simply put, an "agency must <u>actually conduct</u> a search of files likely to contain responsive
documents[,]" and must demonstrate it has done so; an "agency averment that it merely <u>requested</u>
agency officials perform a search is inadequate."  *Reporters Comm. for Freedom of the Press v.
Dep't of Justice*, No. CV 19-2847 (TFH), 2021 WL 5179237, at *7 (D.D.C. Nov. 8, 2021) (denying
summary judgment where the agency declarant averred only that she sent "an office-wide email
seeking responsive communications" explaining there was no evidence "that a search was ever
conducted . . . because [the declarant] did not receive any responses to her email"); *see also Aguiar
v. Drug Enf't Admin.*, 865 F.3d 730, 738–39 (D.C. Cir. 2017) (agency affidavit identifying the
offices "tasked with conducting a search" of specific files but not detailing "how [the offices]
searched within those files" was insufficient); *DeBrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir.
2015) (finding agency declaration insufficient because it did not disclose, *inter alia*, "the type of
search performed").

As this Court has previously explained in the specific context of text messages, an agency
"must either conduct a search of these communications, or if it is unable to do so, explain how it
is not feasible to search these messages for responsive material."  *Am. Oversight v. U.S. Gen. Servs.
Admin.*, 486 F. Supp. 3d 306, 316 (D.D.C. 2020) (quoting *Ctr. for Biological Diversity v. Env't
Prot. Agency*, 279 F. Supp. 3d 121, 143 (D.D.C. 2017)).

Here, Defendants did neither.  Neither of ICE's declarants aver that any search for text messages was actually conducted—let alone what the results of the search(es) were.  *See generally* Decl. of Fernando Pineiro ("Pineiro Decl."), ECF No. 52-2; Decl. of Richard J. Clark ("Clark Decl."), ECF No. 52-3.  The Pineiro Declaration merely states that ICE "tasked" individuals to search for text messages.  Pineiro Decl. ¶ 56.[9]  But simply stating that some persons were "tasked" with conducting a search, without identifying "how the search was conducted," or what each "search specifically yielded" is insufficient to meet Defendants' burden.  *Morley*, 508 F.3d at 1122 (citation omitted); *see also Aguiar*, 865 F.3d at 738 (averring an office "was tasked with conducting a search" does not satisfy agency's burden on summary judgment); *Reporters Comm.*, 2021 WL 5179237, at *7 (averring that agency requested personnel to conduct search is insufficient).  The Clark Declaration, for its part, indicates only that ICE lacks the capacity "to systematically search government-issued cell phones for text messages," Clark Decl. ¶ 19, but it does not address each individual employee's ability to search their own device.  Together, Defendants' declarations fail to show that ICE conducted <u>any</u> search for text messages, much less an adequate one.

ii.  <u>ICE has failed to explain its search methodology for text messages.</u>

Second, even if ICE did conduct a search for responsive text messages, Defendants' motion must be denied because it has not set forth the basic parameters of the strategy (if any) it employed—including who was purportedly "tasked" with such a search.[10]  To be entitled to

_____

[9]  In a generalized umbrella paragraph, the Pineiro Declaration indicates "ICE performed the following agreed upon supplemental searches[.]"  Pineiro Decl. ¶ 54.  However, this broad statement fails to address "which files were searched or by whom[.]"  *Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

[10]  As discussed in Section I.A., *supra*, there is no evidence in the record that any ICE personnel actually conducted any search for text messages.

summary judgment, an agency must "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68. "[A]n affidavit containing no information about the search strategies of the agency components charged with responding to a FOIA request and providing no indication of what each component's search specifically yielded is inadequate to carry the government's summary-judgment burden." *Reporters Comm.*, 877 F.3d at 403 (citation omitted) (cleaned up). For example, in *Weisberg v. Department of Justice*, the D.C. Circuit held that an agency was not entitled to summary judgment with respect to the sufficiency of its search because its affiant did not, *inter alia*, "denote which files were searched or by whom[.]" 627 F.2d at 371.

Defendants' failure to identify who searched what repositories of text messages (much less what they did or did not find) prevents Plaintiffs and the Court from evaluating whether ICE complied with the parties' agreement as to ICE's supplemental search for text messages, or whether, as a general matter, ICE's search was reasonable. In June 2020, "the parties negotiated and agreed to a list of custodians and search terms for [ICE's] supplemental searches pertaining to text messages[.]" Pineiro Decl. ¶ 52. In particular, Plaintiffs' counsel requested that ICE search the text messages of the following agency personnel:

- William P. Joyce
- Thomas Homan
- Ronald Vitiello
- Stephany Miranda
- Mary B. DeAnda-Ybarra
- Patricia Noga
- Leticia Zamarripa
- Elias Gastelo
- Jesus L. Neriz
- Jaime Diaz
- Donald S. George
- Jose A Renteria
- Jose Tavarez
- Cesar A. Cervantes
- ICE's Congressional Liaison(s)
- ICE Health Service Corps' Assistant Health Service Administrator (AHSA) at the El Paso Processing Center

Pls.' SMF ¶ 27; Marshall Decl. Ex. 19. In response, Defendants' counsel confirmed that ICE

would "conduct further searches for text messages and emails <u>using your custodian list</u> and in the manner described in my prior email of June 4, 2020 (i.e., manual searches by custodians still at ICE (applicable to emails and text messages); search by the IT department for those no longer at ICE (emails only)) and subject to the same limitations (for instance, if a custodian no longer is at ICE, then ICE would not be able to have that individual search his or her mobile work phone for text messages)." Pls.' SMF ¶ 28; Marshall Decl. Ex. 20 (emphasis added). ICE's agreement to conduct further searches for text messages was noted in the parties' June 2020 Joint Status Report. *See* ECF No. 25, ¶ 2.

ICE's summary judgment motion, however, is completely silent as to the specific persons who were "tasked" with conducting those searches.[11] *See* Pineiro Decl. ¶¶ 55–56 (stating ICE "tasked two (2) named individuals from the ICE front office, ten (10) named individuals from ERO El Paso and four (4) named OPLA El Paso attorneys to perform a search of their government issued iPhone.")[12] Without such information, neither Plaintiffs nor the Court can verify whether ICE's search methodology complied with the parties' agreement.

Moreover, without knowing who was "tasked" with conducting searches, neither Plaintiffs nor the Court can determine whether ICE's search was "reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68. ICE has provided no information about <u>when</u> a search was conducted, <u>what</u> repositories were searched, or <u>how</u> they were searched. *See generally*

---

[11]    Because the final two entries in the parties' June 2020 agreement did not identify specific persons by name (i.e., ICE's Congressional Liaison(s) and Health Services Corps' Assistant Health Service Administrator ("AHSA") at the El Paso Processing Center), Plaintiffs do not contest Defendants' identification of those persons by their role in the Pineiro Declaration. *Cf.* Pineiro Decl. ¶ 55.

[12]    The parties' June 2020 agreement identified 14 persons by name, *see* Pls.' SMF ¶ 27; Marshall Decl. Ex. 19. ICE states it "tasked" 16 people (not including the Congressional Liaisons and AHSA personnel) with conducting searches, *see* Pineiro Decl. ¶¶ 55–56.

Pineiro Decl.  Without "denot[ing] which files were searched or by whom," *Weisberg*, 627 F.2d at 371, there is no way to evaluate ICE's methodology.  Simply stating that unnamed individuals were tasked "based on Plaintiff's [sic] detailed request," Pineiro Decl. ¶ 55, does not give Plaintiffs the necessary information "to challenge the procedures utilized."  *Weisberg*, 627 F.2d at 371.

**B.     ICE is not entitled to summary judgment as to its search for records of mechanisms used to limit or block phone calls.**

FOIA requesters must "reasonably describe[]" the records they seek. 5 U.S.C. § 552(a)(3)(A).  At the same time, because how agencies manage their internal files is often unknown to the public, agencies "ha[ve] a duty to construe a FOIA request liberally."  *See, e.g.*, *Inst. for Justice v. Internal Revenue Serv.*, 941 F.3d 567, 572 (D.C. Cir. 2019) (quoting *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)).  Agencies "must be careful not to read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester."  *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985) (explaining that to "conclude otherwise would frustrate the central purpose of the Act").  The D.C. Circuit recently reiterated this principle, noting that courts "do not require technical precision in FOIA requests, and a request certainly should not fail where the agency knew or should have known what the requester was seeking all along."  *Inst. for Justice*, 941 F.3d at 572.  Accordingly, when "an agency becomes reasonably clear as to the materials desired, FOIA's text and legislative history make plain the agency's obligation to bring them forth."  *Truitt v. Dep't of State*, 897 F.2d 540, 544 (D.C. Cir. 1990).  Conversely, if an "agency determines that it does not possess any records responsive to a FOIA request, it bears the burden of demonstrating the adequacy of its search."  *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020).

14

Here, the second part of Plaintiffs' Request sought, *inter alia*, records of "mechanisms used to limit or block phone calls from detainees at ICE's El Paso facilities, since March 1, 2018, that mention or contain" specified phone numbers and terms.  Pls.' SMF ¶ 13.   There is substantial evidence that ICE has used such mechanisms at its facilities.  Pls.' SMF ¶ 30.   For example, a 2007 Government Accountability Office report found:

> that the [Office of Inspector General] number was blocked or otherwise restricted at 12 of the facilities that we tested.  Typical problems that we encountered when dialing the OIG's complaint line included getting a voice prompt stating that "this number is restricted," "this is an invalid number," or "a call to this number has been blocked by the telephone service provider."

Marshall Decl. Ex. 21.   Moreover, the "Telephone Access" provision in ICE's own Detention Standards suggests that ICE facilities may impose a number of restrictions on phone use at its facilities.  Marshall Decl. Ex. 22.   And in 2019, an ICE spokesperson confirmed to NBC News that three-way calling and call forwarding from ICE facilities are "strictly prohibited," and that pro bono immigration organizations found to be violating ICE's telephone rules "may be removed from the [phone] platform."  Marshall Decl. Ex. 23.

In support of Defendants' summary judgment motion, ICE's declarant claims that "ICE was unable to reasonably ascertain the records Plaintiff[s] sought in the second prong of the subject FOIA request[.]"  Pineiro Decl. ¶ 53; *see also* Defs.' Mem. at 6.   The implication of that averment is that ICE did not conduct any search for responsive records because it was (purportedly) unable to determine what records Plaintiffs were asking for.   *See id.*   That assertion is specious; it is perfectly clear what Plaintiffs' request seeks.  *Compare* Pls.' SMF ¶ 13, *with Inst. for Justice*, 941 F.3d at 572 ("technical precision" is not required in a FOIA request).   ICE must "bring [the records] forth[,]" *Truitt*, 897 F.2d at 544, or, if its position is that no responsive records exist, "demonstrat[e] the adequacy of its search[,]" *Evans*, 951 F.3d at 584.

ICE's claimed inability to ascertain what records Plaintiffs were requesting is also belied by the record.  During meet and confer discussions, ICE's counsel (1) made clear that ICE knew what records Plaintiffs sought, and (2) claimed that ICE did not have any responsive records.  *See* Pls.' SMF ¶¶ 25–29; Marshall Decl. Exs. 17–18, 20.  Specifically, Defendants' counsel confirmed that "[a]s interpreted by ICE, this request sought records of the El Paso field office concerning any mechanisms used by that office to limit or block phone calls or [sic] detainees."  Marshall Decl. Ex. 17.  Defendants' counsel later stated that "ICE has made inquiries within the El Paso field office and . . . has not identified any mechanisms in that office used to limit or block phone calls of detainees."  Marshall Decl. Ex. 18.  Defendants' counsel further stated that "ICE's position is that there are no responsive records."  *Id.*  In response to those claims, Plaintiffs' counsel cited a number of sources that would assist ICE in locating responsive records (including those noted above), and advised that if "it remains ICE's position that there are no mechanisms for blocking or limiting phone calls from detainees at its El Paso facilities," ICE should provide "a sworn declaration to that effect."  Marshall Decl. Ex. 19.   ICE declined to provide such a declaration, but Defendants' counsel later stated that ICE had conducted a search based on its "understanding of the request[.]"  Marshall Decl. Ex. 20.

ICE's summary judgment papers make no reference, whatsoever, to these communications, which demonstrate unequivocally that ICE "knew . . . what [Plaintiffs] w[ere] seeking all along." *Inst. for Justice*, 941 F.3d at 572.  *Cf. generally* Pineiro Decl.; Defs.' Mem.  Nor is there any mention of the purported "inquiries" that Defendants' counsel previously stated had been made within ICE's El Paso field office.  Marshall Decl. Ex. 18.  Because the record is clear that ICE was able to "ascertain the records Plaintiff[s] sought," *cf.* Pineiro Decl. ¶ 53, and has failed to even attempt to meet its burden to demonstrate "the adequacy of its search" for those records, *Evans*,

951 F.3d at 584, Defendants' motion for summary judgment should be denied.

II.  **ICE's declaration and *Vaughn* index are insufficient to justify its withholdings.**

An agency seeking to withhold information responsive to a FOIA request "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). Such specificity is necessary to balance the "asymmetrical distribution of knowledge that characterizes FOIA litigation." *King v. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987). In addition, "the agency must evaluate <u>each</u> document" it proposes to withhold "to determine if [any] segregable material can be provided to the requestor." *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (emphasis in original).

As the D.C. Circuit has made clear, "the burden is on [agencies] to establish their right to withhold information from the public and they must supply the courts with sufficient information to allow us to make a reasoned determination that they were correct." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980). This showing must be fulsome enough to allow the district court to review the agency's withholdings *de novo*—customarily by providing a "description of each document being withheld" and a specific "explanation of the reason for the agency's nondisclosure." *Oglesby v. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). While the agency need not reveal the substance of withheld material, its description must be "useful"; the agency must provide, at a minimum, "general information (for example: length, date, author and brief description of each document)[.]" *Id.* at 1180–81.

17

Despite taking more than eight months to prepare,[13] ICE's *Vaughn* index and its supporting declarations offer little "useful" information.  *Oglesby*, 79 F.3d at 1175; *see generally* ECF No. 52-2; ECF No. 52-4.  The Pineiro Declaration—much of which is copied verbatim from a prior affidavit filed in another FOIA action—offers only generalized descriptions of withheld documents and rote recitations of general FOIA standards.  ICE's *Vaughn* index, meanwhile, omits numerous documents entirely and for those documents it does address, it does so with only vague descriptions and boilerplate justifications that cannot support summary judgment.  In sum, these documents are patently insufficient to justify Defendants' withholdings.

### A.     The Pineiro Declaration is manifestly deficient.

An agency's affidavits "cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'"  *King*, 830 F.2d at 219 (citation omitted).  The Pineiro Declaration, ECF No. 52-2, on which ICE principally relies, is fundamentally flawed.

Rather than being tailored to the withholdings at issue, the majority of the Pineiro Declaration is lifted from a prior declaration submitted by Pineiro in a separate FOIA action.  *See* Marshall Decl. Ex. 24; *see also Reporters Comm.*, 3 F.4th at 371 (noting the concerning similarities among agency declarations filed in multiple FOIA matters).  Indeed, in one instance Defendants did not even bother to replace the prior plaintiff's name.  *See* Pineiro Decl. ¶ 83 (referring to "Mr. Vidal-Martinez").  The declaration also refers to documents "prepared by employees within OIG," *id.* ¶ 72, even though no records of the DHS Office of the Inspector General are at issue in this case.

---

[13]     The Court first set a briefing schedule in July 2022, by which Defendants were to file their summary judgment brief on October 25, 2022.  *See* Minute Order dated July 22, 2022.

When it does address the records actually at issue in this case, the Pineiro Declaration does so in impermissible generalities.  *See, e.g.*, Pineiro Decl. ¶ 64 (describing the documents only "[g]enerally").  Its proffered justifications for ICE's withholdings "may generously be described as scanty."  *Reporters Comm.*, 3 F.4th at 370.  As discussed below with respect to particular exemptions, the Pineiro Declaration repeatedly parrots statutory standards rather than explain how the agency has satisfied them (and again, many of these recitations were copied verbatim from the declaration Pineiro filed in a prior case).  *Compare, e.g.*, Pineiro Decl. ¶ 69 ("The contents of the discussions and deliberations are pre-decisional in nature because they were prepared in order to assist a decisionmaker in making a final decision. They are deliberative because they occurred during the course of consultative processes and the facts and options discussed in the communications are selective in nature and highlight the portions of records that were deemed pertinent to recommendations and decisions."), *with* Marshall Decl. Ex. 24, ¶ 23 (identical).  Since the Pineiro Declaration is conclusory and not tailored to the records at issue, it cannot support summary judgment in the agency's favor.  *See King*, 830 F.2d at 219.

### B.   ICE's *Vaughn* index is deficient.

"Specificity is the defining requirement" of a *Vaughn* index; an adequate one "must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."  *Id.* at 219–24.  ICE's *Vaughn* index falls short in numerous ways; it is "in a word, inadequate[.]"  *Id.* at 223–24.

First, and most glaringly, ICE's *Vaughn* index fails to even account for numerous withholdings.  It offers no explanation, whatsoever, for the withholding in part of more than 150 pages produced by ICE without Bates numbers.  *See* Marshall Decl. Exs. 25–26.  Similarly absent from the *Vaughn* index are four pages produced in April 2022 following a referral to U.S. Customs

and Border Protection.  *See* Marshall Decl. Ex. 27 (Bates pages 2019-ICLI-00014 CBP 1 through

CBP 4).  Nor does the *Vaughn* index account for numerous documents that Defendants assigned

duplicate Bates numbers, including hundreds of pages from four different productions—one from

USCIS and three from ICE—that used duplicate Bates numbers between 2019-ICLI-00014 001

and 2019-ICLI-00014 249.  *See* Marshall Decl. Exs. 28 (Bates pages 2019-ICLI-00014 1 through

48), 29 (Bates pages 2019-ICLI-00014 49 through 249), 30 (Bates pages 2019-ICLI-00014 001

through 249), and 31 (Bates pages 2019-ICLI-00014 001 through 239).[14]  Thus, for each reference

in the ICE *Vaughn* to pages in this range, Defendants have tasked the Court and Plaintiffs with

guessing which of multiple possible pages it is referring to.

Second, the remaining ICE *Vaughn* entries offer Plaintiffs and the Court very little useful

information due to their generic descriptions of the withheld documents, conclusory justifications

for withholding them, or both.  As to document descriptions, many entries lack any meaningful

description of what was withheld.  For example, the *Vaughn* entry for Bates pages 2019-ICLI-

00014- 3638 through 3640, ECF No. 52-4 at 141, provides no description, whatsoever, of the

record, while the entry for Bates pages 2019-ICLI-00014- 5010 through 5014 indicates only that

"deliberative information" was withheld, ECF No. 52-4 at 162–63.  Other descriptions simply do

not match the withheld record.  For example, Bates pages 2019-ICLI-00014B 831A through 832A

are emails sent in February 2018 between the Acting FOD and unknown individuals regarding an

inquiry from then-Congressman O'Rourke.  Marshall Decl. Ex. 32.  ICE's *Vaughn* index, however,

---

[14]     This error is not accounted for by Defendants' inconsistent convention for assigning
Bates numbers for the first 99 pages, *i.e.*, whether or not the number included preceding zeroes.
For example, there is one entry for page 2019-ICLI-00014- 3, ECF No. 52-4 at 11, but not for
"2019-ICLI-00014- 003" (with preceding zeroes).  Similarly, there is an entry for page 2019-
ICLI-00014- 067, *id.*, but not for "2019-ICLI-00014- 67" (without the preceding zero).

states: "These emails between ERO officers and an OPLA attorney contemplate whether certain information from the Immigration Judge's in [sic] opinion from an active immigration removal hearing concerning the denial of Mr. Gutierrez's asylum application should be disclosed in an ICE Press Release."  ECF No. 52-4 at 30.  Similarly, Bates page 2018-ICFO-42786 365 is a document routing form concerning an inquiry from Senator Heinrich to ICE in December 2017.  Marshall Decl. Ex. 33.  The *Vaughn* index, however, states: "The emails exchanged between ERO officers contemplate whether Emilio Gutierrez-Soto's request for Parole should be granted."  ECF No. 52-4 at 17.  Other document descriptions are so broad and/or generic as to be entirely unhelpful.  The second entry, for example, which applies to dozens of individual documents and spans nine pages of the *Vaughn* index, purports to address "All e-mails and corresponding attachments concerning Emilio Gutierrez-Soto and Oscar Gutierrez-Soto."  ECF No. 52-4 at 2–10.  Within this single category, Defendants include emails concerning everything from media inquiries to Gutiérrez's detention status and immigration proceedings.  *Id.*

ICE's *Vaughn* index is also just as cursory as the Pineiro Declaration in its justifications for the agency's withholdings: primarily reciting statutory standards without further elaboration.  As discussed in further detail below, this is particularly true for entries attempting to justify withholdings under the Exemption 5 deliberative process privilege.  For example, the following sentence appears, verbatim, more than thirty times, regardless of whether it corresponds to the actual documents: "The agency contractors, officers and/or employees are making editorial comments, recommendations, or judgments, such as decisions to insert or delete material, and have a vested authority in their job duties and are in the chain of command of the parties involved in making the suggestions."  *See, e.g.*, ECF No. 52-4 at 29; *id.* at 50–51; *see Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 166 n.8 (D.D.C. 2017) (finding

21

*Vaughn* index inadequate because it was "riddled with incorrect descriptions and repetitive use of a conclusory legal standard for every withheld document").

ICE's conclusory descriptions of documents, coupled with the lack of specificity with respect to the nature of what has been withheld, simply do not provide Plaintiffs with a "realistic opportunity" to challenge Defendants' extensive withholdings. *Oglesby*, 79 F.3d at 1181. Nor do they permit the Court to perform its requisite "searching *de novo* review." *Shapiro v. Cent. Intel. Agency*, 247 F. Supp. 3d 53, 62 (D.D.C. 2017) (quoting *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980)). Given these deficiencies in ICE's declaration and *Vaughn* index—documents that Defendants had more than eight months to prepare—Plaintiffs respectfully request that this Court deny Defendants' motion with respect to all the withholdings that Plaintiffs contest.[15]

### III.   Defendants fail to demonstrate that withheld material is exempt.

Under FOIA, the agency bears the burden to show that a record or portion thereof may be lawfully withheld pursuant to an exemption, 5 U.S.C. § 552(a)(4)(B), and it must adequately justify each withholding in a manner that enables the reviewing court to independently evaluate its propriety. *See Mead Data Cent.*, 566 F.2d at 251. Here, Defendants have failed to demonstrate that withheld records are exempt in part or in full under Exemptions 5, 6, and 7, and Defendants' motion for summary judgment as to those withholdings must be denied. Additionally, summary judgment should be granted to Plaintiffs as to particular records, as set forth below.

---

[15]   As noted above, Plaintiffs do not challenge the withholding of certain information. *See supra* note 7.

**A.**   **Defendants have failed to justify withholdings under Exemption 5 and have improperly withheld records under that Exemption.**

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  For Exemption 5 to apply, the records in question must first qualify as inter-agency or intra-agency memoranda.  *Id.*  If that threshold requirement is met, the agency must then show that the information falls within a recognized privilege.  *See Coastal States*, 617 F.2d at 862.

   i. <u>Defendants improperly withheld a record under Exemption 5 that does not qualify as inter- or intra-agency memoranda.</u>

Defendants have withheld at least one document that fails to meet the threshold requirement for application of Exemption 5.  In late December 2017, a representative from then-Congressman O'Rourke's office emailed about a "pending inquiry" and to ask about the implications of the BIA decision on "the release of Emilio and Oscar[.]"  Marshall Decl. Ex. 34. Despite the fact that this record originated outside the executive branch entirely, Defendants withheld a portion of the email pursuant to Exemption 5.  *Id.* ICE's *Vaughn* index admits to withholding "[e]mail chains between ICE employees" and "third-parties including congressional office employees from Beto O'Rourke's office" pursuant to Exemption 5, ECF No. 52-4 at 165–66, without even attempting to explain how such emails qualify as "inter-agency or intra-agency" documents.  Summary judgment should be granted to Plaintiffs as to this record.

   ii. <u>The Pineiro Declaration and ICE's *Vaughn* index are insufficient to show that the deliberative process privilege applies.</u>

The deliberative process privilege "may only be invoked for documents that are both predecisional and deliberative."  *Reporters Comm.*, 3 F.4th at 362 (citing *U.S. Fish & Wildlife*

*Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785–86 (2021)).  A document is deliberative when it was "prepared to help the agency formulate its position[,]" *Fish & Wildlife Serv.*, 141 S. Ct. at 786, as part of a "definable decision-making process[,]" *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011).  A document is predecisional if it was "generated before the agency's final decision on the matter[.]"  *Fish & Wildlife Serv.*, 141 S. Ct. at 786.

As courts have repeatedly reminded Defendants, "[t]he need to describe each withheld document when Exemption 5 is at issue is particularly acute because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process."  *New Orleans Workers' Ctr. for Racial Just. v. Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 50 (D.D.C. 2019) (citation omitted) (cleaned up); *see also Heartland All. for Hum. Needs & Hum. Rts. v. Dep't of Homeland Sec.*, 291 F. Supp. 3d 69, 79 (D.D.C. 2018) (rejecting as insufficient DHS's repeated "vague explanation" and "mere recitation of the standard for protection under the deliberative process privilege"); *Advancement Project v. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 142 (D.D.C. 2021) (finding ICE's *Vaughn* index and declaration "failed to demonstrate that the deliberative process privilege protects" certain records).  As in those past cases, here, ICE failed to adequately support its extensive withholdings under the deliberative process privilege.

### a.  *Defendants fail to show that withheld records are "deliberative."*

For each withholding, it is Defendants' burden to demonstrate the withheld information is "deliberative" by addressing four elements: (1) "what deliberative process is involved"; (2) "the role played by the documents in issue in the course of that process"; (3) the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document"; and (4)

"the relative positions in the agency's chain of command occupied by the document's author and recipient." *Am. Immigr. Council v. Customs & Border Patrol*, 590 F. Supp. 3d 306, 324 (D.D.C. 2022), *reconsideration denied*, No. CV 19-2965 (RC), 2023 WL 2755412 (D.D.C. Apr. 3, 2023) (citation omitted) (cleaned up).

The Pineiro Declaration only attempts to justify how one category of records—"internal communications between ERO officers and Public Affairs Officers"—could be considered deliberative.  Pineiro Decl. ¶ 69.  And the explanation it offers—copied verbatim from Pineiro's prior declaration in another matter—is utterly generic: "They are deliberative because they occurred during the course of consultative processes and the facts and options discussed in the communications are selective in nature and highlight the portions of records that were deemed pertinent to recommendations and decisions."  *Id.*; *cf.* Marshall Decl. Ex. 24, ¶ 23 (identical).  The declaration fails even to elaborate as to what "consultative processes" are purportedly at issue in this category of records, much less to address the remaining three elements.  And outside this single category, the declaration fails to account whatsoever for the remaining documents.

Similarly, ICE's *Vaughn* index provides "insufficient information" for "the Court to discern the relevant deliberative process and [each] document's role in it."  *Am. Immigr. Council*, 590 F. Supp. 3d at 331.  For example, ICE withheld certain emails "regarding the status of [Gutiérrez's] immigration case and coordination of potential ERO actions."  ECF No. 52-4 at 91.  But Defendants fail to "describe in sufficient detail what decision or policy these documents were leading towards[.]"  *Am. Immigr. Council*, 590 F. Supp. 3d at 328.  Similarly, Defendants withheld portions of June 2018 emails "about the pending decision from immigration court and ERO's response to the court decision," ECF No. 52-4 at 73, without sufficiently elaborating as to either "the particular decisionmaking process or the function of the records in that process[.]"  *Hunton*

25

*& Williams LLP v. Env't Prot. Agency*, 248 F. Supp. 3d 220, 242 (D.D.C. 2017).  And in at least

one instance, Defendants withheld material that is inherently factual, not deliberative: portions of

a December 2017 email in which an Assistant FOD "clarifies the procedural history [of

Gutiérrez's] request for asylum as it relates to his detention status and suggests information that

should be included in future press releases."  ECF No. 52-4 at 57[16]; *see* Marshall Decl. Ex. 35.

Any portions of this email that "clarif[y] the procedural history" are not deliberative, and thus

cannot be withheld.  *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir.

1992) ("Under the deliberative process privilege, factual information generally must be

disclosed[.]").  Summary judgment should be granted to Plaintiffs as to that withholding.

Defendants also "made essentially no effort to satisfy the 'key feature'" of the deliberative

process privilege "by identifying 'the relation between the author and recipients of the

document[s].'"  *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 103 (quoting *Access Reps. v.

Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)); *see also New Orleans Workers' Ctr. for

Racial Just.*, 373 F. Supp. 3d at 53 (finding ICE failed their "burden to provide 'explicit'

information regarding the parties to these documents").  For example, Defendants withheld emails

between the Acting FOD and unidentified ICE employees from late December 2017.  Marshall

Decl. Ex. 76.  ICE's *Vaughn* index describes these records vaguely as "a deliberation between ICE

employees about [Gutiérrez] and a medical issue he has while he is in ICE custody," and claims

the portions redacted under Exemption 5 are simply "deliberative information."  ECF No. 52-4 at

162–63.  But it fails to identify the "ICE employees" who were parties to the email.  And even

*Vaughn* entries that provide some information about the parties, such as their official titles, fail to

---

[16] Portions of this record were also withheld under a claim of the attorney-client privilege.

disclose "the nature of the decisionmaking authority vested in the participants[.]"  *Hunton*, 248 F. Supp. 3d at 244; *see, e.g.*, ECF No. 52-4 at 29 (withholding "E-mail communications between an Acting ERO Assistant Field Office Director and an ERO Officer in Charge discussing the date for [Gutiérrez's] immigration hearing and contemplating ERO's potential actions with respect to his further detention"); *id.* at 52 (withholding "E-mail communications between ERO AFODs and ICE Public Affairs Officers concerning Emilio and Oscar Gutierrez-Soto's Emergency Stay at the BIA and releasing information to the media").   By failing to include such information, Defendants "have again failed to explain the basis for the [deliberative process] exemption well enough to assess whether it has been properly claimed."  *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 103.

### b.  *Defendants fail to show that withheld records are "predecisional."*

Defendants also fail to meet their burden to demonstrate that the withheld materials are predecisional.  "A document is predecisional if it was 'generated before the adoption of an agency policy.'"  *Jud. Watch, Inc. v. Dep't of Justice*, 20 F.4th 49, 54 (D.C. Cir. 2021) (quoting *Coastal States*, 617 F.2d at 866).  The "court must be able 'to pinpoint an agency decision or policy *to which the document contributed*.'"  *Senate of P.R. v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (emphasis added) (citation omitted).

The Pineiro Declaration asserts generally that withheld records "are pre-decisional in nature because they were prepared in order to assist a decisionmaker in making a final decision."  Pineiro Decl. ¶ 69.[17]  This statement, too, appears to have been copied verbatim from a prior

---

[17]     The Pineiro Declaration also contains a statement about purportedly predecisional documents "prepared by employees within OIG and ICE[.]"  Pineiro Decl. ¶ 72.  This presumably refers to the DHS Office of the Inspector General, whose records are not at issue in this matter, and further suggests that ICE's declarant simply repurposed a prior declaration.

declaration, *see* Marshall Decl. Ex. 24, ¶ 23, and cannot satisfy Defendants' burden in any event. *Hall v. Dep't of Justice*, 552 F. Supp. 2d 23, 28–29 (D.D.C. 2008) ("Conclusory assertions of the privilege that merely parrot legal language or contain no factual support are insufficient.").

ICE's *Vaughn* index also falls far short of enabling the Court to pinpoint a decision to which a particular record contributed, or even to infer that the record preceded such a decision. For example, Defendants withheld portions of a January 2018 email in which the Acting FOD circulated a finalized response sent to then-Congressman O'Rourke.  Marshall Decl. Ex. 36.  The *Vaughn* index justifies these withholdings on the ground that "the ERO AFOD expresses his opinion as to Mr. Gutierrez-Soto's health status." ECF No. 52-4 at 58–59.[18]  However, Defendants do not indicate to what—if any—decision that opinion may have contributed, indicating only that the email "contains recommendations for agency action[.]"  *Id.* at 59.  Defendants offer this same generic justification in more than a dozen other entries.  *See, e.g.*, *id.* at 16, 21, 70, 118.

Similarly, Defendants withheld portions of a December 7, 2017, email in which the Acting FOD circulated "signed stay denials" to subordinates in the El Paso ICE office.  Marshall Decl. Ex. 37.  Notably, this is the same day that ICE took Gutiérrez and his son into custody and attempted to deport them.  Marshall Decl. Ex. 4.  Weeks earlier, on November 16, Gutiérrez's attorney had requested that the Acting FOD stay deportation.  Marshall Decl. Ex. 38 at 2 (application for stay of removal submitted Nov. 16, 2017).  And the produced emails show that, as of November 18, the Acting FOD had made up his mind; he had given instructions to "remove the subjects by their next reporting date (12/7)."  Marshall Decl. Ex. 37 at 5.  The Acting FOD finalized his decision by signing and circulating the denials via email on December 7.  *Id.* at 1.

---

[18]     Portions of this record were also withheld under a claim of the attorney-client privilege.

Defendants have withheld portions of the Acting FOD's email pursuant to the deliberative process privilege.  *Id.*; ECF No. 52-4 at 162–63.  But, in context, it is clear the records reflect an already final decision being communicated down the supervisory chain from the Acting FOD to subordinates—not a predecisional deliberation.  *Compare id.*, *with Coastal States*, 617 F.2d at 868 ("[A] document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made.").  While the *Vaughn* index addresses portions of these records concerning "steps on what [sic] to take next, after the final stay order had been ruled on" by the Acting FOD, ECF No. 52-4 at 162, the email chain contains communications <u>following</u> the Acting FOD's decision—to deny the request and remove Gutiérrez and his son by their "next reporting date"—which was communicated to his subordinates weeks earlier.  Marshall Decl. Ex. 37 at 5.  ICE does not (and cannot) explain how these post-decisional communications can be considered predecisional.  Those records should be released to Plaintiffs.

Because Defendants have failed to meet their burden to show that the withheld materials are subject to the deliberative process privilege, their motion as to these withholdings must be denied, and summary judgment should be granted to Plaintiffs as to the records identified herein.

iii. <u>The Pineiro Declaration and ICE's *Vaughn* index are insufficient to support Defendants' withholdings on the basis of the attorney-client privilege.</u>

For the attorney-client privilege to apply, an agency must demonstrate that "securing legal advice was a 'primary purpose' of the agency's communication."  *Cause of Action Inst. v. Dep't of Justice*, 330 F. Supp. 3d 336, 347 (D.D.C. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759–60 (D.C. Cir. 2014)).  The other "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since."

*Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 154 (D.D.C. 2012) (quoting *Coastal States*, 617 F.2d at 863). "As with the other prongs of Exemption 5, the burden rests with the Government to prove, through 'detailed and specific information,' that the withheld information falls within the domain of the privilege." *Cause of Action*, 330 F. Supp. 3d at 347 (quoting *Campbell*, 164 F.3d at 30).

Here, Defendants invoke the attorney-client privilege in a perfunctory manner insufficient to meet their burden. First, Defendants make no showing with respect to <u>any</u> withholding to prove that the information withheld was kept confidential. *Cf. Cuban v. Sec. & Exch. Comm'n*, 744 F. Supp. 2d 60, 79–80 (D.D.C. 2010). The Pineiro Declaration, which primarily recites statutory standards for the privilege, fails to even mention this essential element. *See* ECF No. 52-2 ¶¶ 68, 75–76. For this reason alone, ICE's motion should be denied with respect to all attorney-client privilege withholdings.

Second, ICE fails to show that securing legal advice was a "primary purpose" of any of the withheld communications. Its *Vaughn* index offers little information beyond the fact that an attorney was party to a given communication. For example, Defendants withheld portions of Bates pages 2019-ICLI-00014B- 1001A through 1002A under a claim of attorney-client privilege.[19] *See* Marshall Decl. Ex. 39. ICE's *Vaughn* index describes this record as "[e]-mail communications between an ICE Public Affairs Officer, an ERO AFOD, an ERO Officer in Charge, and multiple OPLA Attorneys reviewing and commenting on a draft public statement pertaining to the status of [Gutiérrez's] immigration case." ECF No. 52-4 at 77. And it describes the portions withheld under the attorney-client privilege as: "This email communication from OPLA attorney to client

---

[19]    Portions of this email thread also were withheld under a claim of deliberative process privilege. *See* ECF No. 52-4 at 77.

ERO Assistant Field Office Director is an explanation of the Court's Summary Judgement [sic] order." *Id.* But the fact that an agency attorney explained a court order to public affairs officers drafting a public statement does not make that explanation privileged. Defendants "must provide more than the talismanic adjective 'legal' and the conclusory phrase 'attorney client privileged' to establish that a document was sent for the purpose of conveying legal advice." *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 309 (D.D.C. 2013). Defendants have not met their burden to "describe with some reasonable level of detail the nature of the legal issue or issues for which advice was being sought and whether the withheld e-mails seek legal advice, convey legal advice, or both." *Id.*

### B. Defendants fail to justify withholdings under Exemptions 6 and 7(C).

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes" to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" *Id.* § 552(b)(7)(C).

Defendants fail to meet their burden to demonstrate that certain responsive information has been properly withheld under either exemption.[20] Notably, Defendants indiscriminately cite both exemptions for each withholding, and they make no serious attempt to meet their threshold burden under Exemption 7(C) to demonstrate that each record was compiled for law enforcement purposes. Further, Defendants address individuals' privacy interests in slapdash, categorical fashion, lumping line officers together with high-ranking officials, many of whose identities are

---

[20]    As noted above, Plaintiffs do not challenge the withholding of certain information. *See supra* note 7.

already known both generally and with respect to Gutiérrez's case, specifically. Such categorical treatment of privacy interests is improper, and summary judgment in favor of Plaintiffs is warranted as to at least certain redactions, as set forth below.

> i.  Defendants fail to demonstrate that Exemption 7 applies to withheld records.

To invoke Exemption 7(C), Defendants must first show that a record was "compiled for law enforcement purposes[.]" 5 U.S.C. § 552(b)(7). As courts have reminded ICE, "[i]n assessing whether records are compiled for law enforcement purposes, this [C]ircuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *New Orleans Workers' Ctr. for Racial Just.*, 373 F. Supp. 3d at 56 (citation omitted) (cleaned up) (rejecting ICE's "blanket assertion that all the information withheld" satisfied the Exemption 7 standard simply because ICE has law enforcement functions); *see also Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 31 n.10 (D.D.C. 2018) (rejecting DHS's "blanket assertion" that "any records created by a program office that provides support to ICE meet the Exemption 7 threshold"). An agency must "address the individual circumstances" of each document, particularly where "the withheld information appears to relate to a wide variety of subjects[.]" *New Orleans Workers' Ctr. for Racial Just.*, 373 F. Supp. 3d at 56–57. Although law enforcement agencies are entitled to some deference as to the Exemption 7 threshold, "the Court's review of such claims 'is not vacuous.'" *Id.* at 56 (quoting *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982)). "To be sure, not every document compiled by a law enforcement agency is compiled for a law enforcement purpose." *100Reporters LLC v. Dep't of Justice*, 248 F. Supp. 3d 115, 159 (D.D.C. 2017).

Defendants have not satisfied their threshold burden under Exemption 7.  The Pineiro Declaration copies generic language verbatim on this matter from a prior declaration and even refers to the incorrect party.  *Compare* Pineiro Decl. ¶ 83, *with* Marshall Decl. Ex. 24, ¶ 28.  And at least one court has rejected virtually identical language as insufficiently detailed.  *See New Orleans Workers' Ctr. for Racial Just.*, 373 F. Supp. 3d at 56 (rejecting another declaration from Pineiro).  Further, as in that case, ICE's *Vaughn* index here "make[s] no attempt to address the specific law enforcement purpose of the withheld documents."  *Id.*

In their brief, Defendants attempt to salvage this lack of specificity in their supporting documents by focusing on a single *Vaughn* entry regarding "records and screen shots" from "the ENFORCE Alien Removal Module ('EARM')," Defs.' Mem. at 21; ECF No. 52-4 at 1.  Defendants suggest this single entry and their cursory declaration suffice to "support[] ICE's Exemption 7 redactions throughout" the records.  Defs.' Mem. at 22.  This is untenable given the variety of topics addressed in the withheld records, which include, for example, managing press relations and responding to media inquiries (ECF No. 52-4 at 2, 19, 27, 55–57, 79, 83, 96, 121, 131–132, 162–164), as well as responding to inquiries from members of Congress (ECF No. 52-4 at 2, 18, 23, 30, 39, 58, 95, 99–100, 142).  The connection between these records and ICE's law enforcement functions is far from "self-evident[,]" as Defendants claim.  Defs.' Mem. at 22.

Instead of demonstrating that particular documents were compiled for law enforcement purposes, Defendants' argument "rest[s] almost entirely on the premise that, as a law-enforcement agency, ICE's records and documents are necessarily produced for law-enforcement purposes." *Am. Immigr. Council v. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245 (D.D.C. 2013).  Again, this is insufficient.  Since ICE has failed to satisfy its threshold burden under Exemption 7, the

Court should deny summary judgment with respect to all its purported Exemption 7(C) withholdings.

      ii.    <u>Defendants fail to justify withholdings under Exemptions 6 and 7(C).</u>

Even if Defendants have satisfied their threshold burden under Exemption 7, they fail to support their extensive withholdings under Exemptions 6 and 7(C).

           *a.*  *Defendants fail to identify the privacy interests at stake and cannot do so with respect to high-level ICE officials whose identities are known to the public.*

To invoke Exemptions 6 and 7(C), the government must first articulate whether there are any privacy interests at stake. *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) ("To apply exemption 6, a court must first determine whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." (citations omitted) (cleaned up)); *Am. C.L. Union v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("The first question we must ask [in evaluating Exemption 7(C) claims] is whether there is any privacy interest at stake[.]"). "[A]lthough 'a categorical approach' to describing the privacy interests of individuals may be appropriate in some instances[,] it is inadequate when the categories 'include a wide range of claims covering various degrees of privacy interests.'" *New Orleans Workers' Ctr. for Racial Just.*, 373 F. Supp. 3d at 60 (quoting *Prison Legal News*, 787 F.3d at 1150–51) (finding ICE failed to sufficiently differentiate privacy interests among various subgroups); *see also 100Reporters LLC*, 248 F. Supp. 3d at 165 (denying summary judgment where government relied on categorical arguments but failed to particularize privacy interests for "defined subgroups" (citation omitted)).

Here, as in past cases, ICE has articulated privacy interests based on impermissibly broad categories of individuals. The Pineiro Declaration offers only two categories of individuals with purported privacy interests: ICE employees and "non-ICE individuals, such as DOJ attorneys[.]"

Pineiro Decl. ¶¶ 88, 90.  ICE's *Vaughn* index uses a similar, impermissibly broad ICE-versus-non-ICE dichotomy.  *See, e.g.*, ECF No. 52-4 at 2 (describing the withheld information as "Names, addresses, direct telephone numbers, initials, signatures and e-mail addresses of ICE employees" and similar information for "third-party individuals such as reporters and contractors").  Each of these categories is, of course, staggeringly broad and fails to account for the "various degrees of privacy interests" at issue.  *New Orleans Workers' Ctr. for Racial Just.*, 373 F. Supp. 3d at 59–60 (citation omitted) (rejecting ICE's categorical attempt to articulate privacy interests based on individuals' status as a "federal employee[]," an "immigration officer[]," or a "third part[y]").

With respect to ICE employees, Defendants fail to account for the divergent privacy interests between high-ranking officials and rank-and-file officers and administrators.  *See Miller v. Dep't of Justice*, 872 F. Supp. 2d 12, 25 (D.D.C. 2012) (noting "apparent discrepancy in how much privacy lower-level employees can expect" versus their superiors).  Indeed, ICE makes no attempt to show how high-ranking, public-facing officials retain any discernible privacy interest in their identities, much less how their privacy interest can be conflated with the privacy interests of lower-ranking ICE employees.  *Cf. New Orleans Workers' Ctr. for Racial Just.*, 373 F. Supp. 3d at 60 (ICE "failed to provide the Court with adequate information to assess the privacy interests of the [ICE] employees whose names and email addresses it has withheld").  For that reason, Defendants' motion should be denied as to all redactions that pertain to ICE employees.

Likewise, Defendants lump together all "non-ICE individuals" into a monolithic "third party" category—which includes private citizens such as reporters, as well as "DOJ attorneys" and other federal employees.  Pineiro Decl. ¶ 90.  As in *100Reporters*, ICE has failed "to differentiate the privacy interests of different individuals, or even different groups, such as [private] employees

and government personnel." 248 F. Supp. 3d at 163. Such "failure to justify this categorical approach is fatal to its withholdings." *Id.*

Moreover, it is clear that Plaintiffs are entitled to summary judgment as to the redactions of certain ICE employees' names, including Acting FOD Joyce, Deputy FOD (and later Acting FOD) Diane L. Witte, ICE chief counsel Elias Gastelo, and other high-ranking and/or public-facing officials who have no discernible privacy interest because their identities are already public. *See Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 840 F. Supp. 2d 226, 233 (D.D.C. 2012) ("One can have no privacy interest in information that is already in the public domain[.]"). For example, Defendants withheld Acting FOD Joyce's name from a December 2017 email in which he described Gutiérrez as "probably our most notorious detainee right now[.]" Marshall Decl. Ex. 40. Just days earlier, however, Joyce gave an attributed press statement regarding Gutiérrez's detention. Marshall Decl. Ex. 41; *see also* Marshall Decl. Exs. 12 (open letter from free press advocates to Acting FOD Joyce in February 2018), 42 (ICE press release from October 2017 identifying Joyce as the Acting FOD). Egregiously, Defendants even redacted Joyce's name from copies of filings in Gutiérrez's *habeas* litigation, in which Joyce was a named party. *See, e.g.*, Marshall Decl. Exs. 43–44; *see also Tokar v. Dep't of Justice*, 304 F. Supp. 3d 81, 101 (D.D.C. 2018) (finding DOJ attorneys lacked "'even a modest privacy interest' in their anonymity" due to frequent identification in court filings (citation omitted)). Other improper redactions of Joyce's name abound in the records produced to Plaintiffs. Marshall Decl. Exs. 38, 45, 74. Summary judgment should be granted to Plaintiffs as to each such redaction.

Similarly, Defendants repeatedly withheld the name of the El Paso Deputy FOD, Diane L. Witte ("Witte")—who succeeded Joyce as Acting FOD—despite her rank and public identification on public court dockets and in the press. *See, e.g.*, Marshall Decl. Exs. 48–49, 71, 75; *see also*

Marshall Decl. Exs. 46 (identifying Witte as the Deputy FOD in El Paso), 47 (same), 70 (identifying Witte as Acting FOD in El Paso).  Summary judgment also should be granted in Plaintiffs' favor as to each redaction of Witte's name.

Defendants also repeatedly withheld the name of the Chief Counsel in the El Paso ICE office, Elias Gastelo, whose identity is already in the public domain.  *See* Marshall Decl. Ex. 51 (identifying Gastelo as Chief Counsel in El Paso).  Further, Gastelo is already publicly linked to Gutiérrez's treatment.  *See* Marshall Decl. Ex. 50 (reporting that Gastelo told the National Press Club's Executive Director, Bill McCarren, to "tone it down" during a meeting about Gutiérrez's detention); *see also* Marshall Decl. Exs. 52 (withholding the name of the Chief Counsel), 53 (same).  Plaintiffs should be granted summary judgment as to each redaction of Gastelo's name.

There is reason to believe ICE withheld the names of other officials who are high-ranking, public-facing, and/or publicly linked with Gutiérrez's detention and treatment.  These include: then-Deputy Chief Counsel in El Paso Jaime Diaz, who was appointed as an Immigration Judge in 2021, *see* Marshall Decl. Exs. 54 (DOJ website identifying Immigration Judge Diaz as former Deputy Chief Counsel in El Paso), 55 (withholding the name of the Deputy Chief Counsel), 56 (same),  57 (same), 58 (same); then-Assistant FOD Mary De Anda-Ybarra, who currently serves as the FOD in El Paso, *see* Marshall Decl. Ex. 59; and Assistant FOD Jose Renteria, who has been sued in his official capacity, *see Perez-Mendez v. Price*, No. EP-17-CV-00089-DCG, 2017 WL 8181557 (W.D. Tex. Aug. 8, 2017) (dismissing *habeas* petition against Renteria in his official capacity as Assistant FOD).  Documents produced in response to Plaintiffs' Request indicate that the Acting FOD corresponded with De Anda-Ybarra and Renteria about Gutiérrez's case.  *See, e.g.*, Marshall Decl. Ex. 60.  There is also reason to believe ICE withheld the names of: ICE spokesman Carl Rusnok, *see* Marshall Decl. Exs. 61 (press report identifying Carl Rusnok as

"director of communications for the Central Region U.S. Immigration and Customs Enforcement"), 62 (redacting the name of ICE's "Director of Communications, Central Region"), 63 (same); ICE spokesperson Leticia Zamarripa, *see* Marshall Decl. Exs. 64 (press report with statement from Zamarripa about Gutiérrez's case), 65 (email thread produced by Defendants between Zamarripa and the Acting FOD); and ICE officer Patricia Noga, *see* Marshall Decl. Ex. 66.

Summary judgment should be granted in Plaintiffs' favor as to each redaction of the above names, as well as the name of any other high-ranking and/or public-facing ICE official.

> *b. Defendants failed to balance the weighty public interests in disclosure.*

Since Defendants have failed to "establish the different privacy interests at stake" under either Exemption 6 or Exemption 7(C), it is "impossible for the Court to balance the private interests with the public's interest in knowing 'what their government is up to.'" *100Reporters LLC*, 248 F. Supp. 3d at 165 (quoting *Reporters Comm.*, 489 U.S. at 773); *see also New Orleans Workers' Ctr. for Racial Just.*, 373 F. Supp. 3d at 63. Nevertheless, there is clear, overwhelming public interest in disclosure of ICE officials' identities.

Plaintiffs' FOIA Request concerns matters of immense public concern—namely, allegations that Defendants improperly targeted Gutiérrez, a journalist, for detention and deportation after he criticized the U.S. government. This is a quintessential example of the public's interest in "the manner in which the [government] carries out substantive law enforcement policy[.]" *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (collecting cases). Further, credible allegations of government misconduct and impropriety such as those at issue here are also weighty demonstrations of public interest. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 173 (2004). Plaintiffs have far

more than a "bare suspicion" of such impropriety, *id.* at 174; a federal district court found "enough evidence to create a genuine issue of material fact regarding whether [DHS and ICE officials] retaliated against [Gutiérrez and his son]" based on Gutiérrez's political speech. *See Gutierrez-Soto*, 317 F. Supp. 3d at 934.  Multiple members of Congress raised similar concerns regarding ICE's treatment of Gutiérrez, Pls.' SMF ¶ 35; Marshall Decl. Exs. 14–16, as did free press organizations, Pls.' SMF ¶ 36; Marshall Decl. Exs. 12–13.

Here, Defendants have failed to show that the individuals in question, particularly the ICE officials who repeatedly detained and attempted to deport Gutiérrez, have any privacy interest that would outweigh the weighty public interest in this information.  For example, Defendants redacted the Acting FOD's, Deputy FOD's, and other ICE officials' names from, among other documents: documentation of crucial decisions about the attempt to deport Gutiérrez, *see, e.g.*, Marshall Decl. Exs. 38, 48; documentation regarding ICE's decision to keep Gutiérrez in custody pending his asylum appeal, *see, e.g.*, Marshall Decl. Ex. 75; and even official correspondence with members of Congress regarding these decisions, *see, e.g.*, Marshall Decl. Exs. 45, 73–74.  This is the kind of information the public has an overwhelming interest in knowing.  The public's interest necessarily overwhelms any minimal privacy interest the ICE officials might maintain.

## IV.  Defendants fail to satisfy the "foreseeable harm" standard with respect to their deliberative process privilege withholdings.

Defendants' motion for summary judgment must be denied as to ICE's deliberative process privilege withholdings for the separate and independent reason that ICE does not—indeed, it scarcely even attempts to—demonstrate compliance with FOIA's "foreseeable harm" provision. Added to FOIA by the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 (2016), the foreseeable harm provision prohibits an agency from withholding a record unless it

demonstrates that it "reasonably foresees that disclosure would harm an interest protected by [that] exemption" or disclosure is prohibited by law.  5 U.S.C. § 552(a)(8).  As the D.C. Circuit has made clear, it imposes an "independent and meaningful burden on agencies."  *Reporters Comm.*, 3 F.4th at 369 (quoting *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106).  And, to meet that burden, "[a]gencies cannot rely on mere speculative or abstract fears" or proffer only "generalized assertions."  *Id.* (citations omitted) (cleaned up).

In enacting the foreseeable harm requirement, "Congress was particularly concerned with increasing agency overuse and abuse of Exemption 5 and the deliberative process privilege."  *Id.* (citing H.R. Rep. No. 114-391, at 9–10 (2016)).  And, "[i]n the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations."  *Id.* at 369–70 (citing *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)).  Agencies must provide a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward. Naturally, this inquiry is context specific."  *Id.* (citations omitted).

Here, ICE has failed to make any concrete, context-specific showing of reasonably foreseeable harm as to its deliberative process privilege withholdings.  Like other declarations found deficient by the D.C. Circuit, the Pineiro Declaration devotes a single "umbrella" paragraph to foreseeable harm.  Pineiro Decl. ¶ 79; *see Reporters Comm.*, 3 F.4th at 372 (rejecting the FBI's "perfunctory, sweeping, and undifferentiated declaration" as insufficient).  The *Vaughn* index, meanwhile, provides only "generalized, vague assertions[,]" which are likewise insufficient.  *Am. Immigr. Council*, 590 F. Supp. 3d at 333.  Indeed, with only minor variations, the following

sentence appears dozens of times throughout the *Vaughn*:

> The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have been adopted by the agency.

*See, e.g.*, ECF No. 52-4 at 16, 51, 62, 89, 102, 116.  ICE also sprinkled in another boilerplate justification:

> Disclosure would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel, and also ensure personnel would be less inclined to freely memorialize their thoughts regarding litigation strategies, which would adversely affect the ability to ICE to effectively conduct government business.

*See, e.g.*, ECF No. 52-4 at 109, 113, 143, 161.  Defendants cannot simply repeat the same pair of generic justifications *ad nauseum*.  *See Project on Gov't Oversight, Inc. v. Dep't of Homeland Sec.*, No. 1:18-CV-2051-RCL, 2023 WL 2139380, at *9 (D.D.C. Feb. 21, 2023) (foreseeable harm requirement not met where "[e]ach *Vaughn* index entry expresses this same [vague] justification").

Further, Defendants simply cannot satisfy the foreseeable harm requirement for certain of their withholdings.  For example, Defendants withheld at least one near-final draft media statement.  *See* Marshall Decl. Ex. 67 (withholding draft responses to reporter which were "ELP FOD & OPLA approved").  To the extent draft press statements are "nearly identical to the final versions," they are "obvious example[s]" of records where "identifying the precise harm that disclosure would cause could be extremely difficult."  *Am. Immigr. Council*, 590 F. Supp. 3d at 334.

**V.     Defendants' summary judgment motion should be denied as moot with respect to records and information they previously released to Plaintiffs.**

A claim is moot when it presents no live, justiciable controversy.  *See Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (explaining that a case is moot when there is "no longer any actual controversy between the parties").  FOIA claims have been dismissed as moot when the records in dispute have been turned over to the requester.  *See, e.g.*, *Heily v. Dep't of Defense*, 896 F. Supp. 2d 25 (D.D.C. 2012), *aff'd*, No. 13-5055, 2013 WL 5975876 (D.C. Cir. Oct. 16, 2013).

Here, Defendants ask the Court to grant summary judgment in their favor as to information that has already been released to Plaintiffs in the following Bates-stamped pages:

- 2018-ICFO-42786- 104 / Exemption 5
- 2018-ICFO-42786- 187 / Exemption 5
- 2018-ICFO- 42786-192 / Exemption 5
- 2018-ICFO-42786- 203 / Exemption 5
- 2019-ICLI-00014B- 480 / Exemptions 6 and 7(C)
- 2019-ICLI-00014B- 486 / Exemptions 6 and 7(C)
- 2019-ICLI-00014B- 553–557 / Exemptions 6 and 7(C)
- 2019-ICLI-00014B 713

*See* ECF No. 52-4 at 15–16, 23.  But given the agency's release of this material to Plaintiffs, *see id.*, Defendants' exemption claims as to this information are moot.  *Cf. Heily*, 896 F. Supp. 2d at 37 ("[P]laintiff's receipt of the requested documents thus renders his claims under the FOIA moot[.]").  Plaintiffs respectfully request that the Court deny Defendants' summary judgment motion as to this information as moot.

Although Defendants' motion is moot as to information they have already released, a review of the material that ICE claims *should* be withheld under Exemption 5 raises additional questions as to its reliance on that exemption in this case, as well as its compliance with the Act's foreseeable harm provision.  *See* 5 U.S.C. § 552(a)(8).

First, ICE produced (and then later withheld) material reflecting the Acting FOD's affirmative decision in June 2018 to forgo making a "custody redetermination" about Gutiérrez until after a scheduled hearing in August. *Compare* Marshall Decl. Ex. 70 (releasing the following sentence: "After the hearing happens, let's make a custody redetermination."), *with* Marshall Decl. Ex. 71 (redacting this same sentence). In their summary judgment papers, Defendants attempt to argue this material is exempt under the deliberative process privilege, ECF No. 52-4 at 29, even though it is plainly a final decision being communicated by the Acting FOD to subordinates.

Further, Defendants seek to belatedly withhold information that is so utterly banal that it calls into question their understanding of the foreseeable harm standard. For example, Defendants now seek to withhold a portion of a December 2017 email that ICE claims is protected by the deliberative process privilege. Two versions of the page of the email in question are attached as Exhibits 68–69 to the Marshall Declaration; the relevant portions are reproduced below:



*Marshall Decl. Ex. 68 (Jan. 2023 Release)  |  Marshall Decl. Ex. 69 (Feb. 2023 Release)*

ICE (apparently) views release of the phrase "would be huge if that could be mentioned in your (or Carl's) release" to be protected by the deliberative process privilege and, if released, would cause harm. *See* ECF No. 52-4 at 15–16. That claim is absurd, especially since the less-redacted

version does not even identify <u>what</u> "would be huge" if mentioned.  An attempt to withhold this information, at best, reflects the type of "fear of embarrassment" that is insufficient to justify withholding under the foreseeable harm standard.  *Reporters Comm.*, 3 F.4th at 369 (citation omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied, and summary judgment entered in Plaintiffs' favor in part.

Dated: June 23, 2023

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
D.C. Bar No. 1026115
Adam A. Marshall
D.C. Bar No. 1029423
Shawn Musgrave
D.C. Bar No. 90002165
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Fax: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: smusgrave@rcfp.org

Charles D. Tobin
D.C. Bar No. 455593
BALLARD SPAHR LLP
1909 K Street, NW 12th Floor
Washington, DC 20006-1157
Phone: 202.661.2200
Email: tobinc@ballardspahr.com

*Counsel for Plaintiffs*