# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**NATIONAL PRESS CLUB JOURNALISM INSTITUTE, et al.**

        Plaintiffs,

    v.

**UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.**

        Defendants.

Civil Action No. 18-cv-2932 (RC)

## REPLY IN SUPPORT OF
## PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Katie Townsend
D.C. Bar No. 1026115
Adam A. Marshall
D.C. Bar No. 1029423
Shawn Musgrave
D.C. Bar No. 90002165
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: smusgrave@rcfp.org

Charles D. Tobin
D.C. Bar No. 455593
BALLARD SPAHR LLP
1909 K Street, NW 12th Floor
Washington, D.C. 20006-1157
Phone: 202.661.2200
Email: tobinc@ballardspahr.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.    Defendants bear the burden of justifying their withholdings.............................. 1

II.   Defendants' *Vaughn* index and supporting declarations fail to carry their burden. ........... 2

III.  Defendants are not entitled to summary judgment as to the sufficiency of their search
      for records of mechanisms used to limit or block phone calls............................ 5

IV.   Defendants fail to demonstrate that material withheld under Exemption 5 is exempt. ...... 8

      A.   Defendants concede they improperly withheld a record that does not qualify as
           inter- or intra-agency memoranda................................................................. 8

      B.   Defendants fail to support their deliberative process privilege withholdings.............. 8

           i.    Defendants fail to show that withheld records are "deliberative." ...................... 8

           ii.   Defendants fail to show that withheld records are "predecisional.".................... 11

      C.   Defendants fail to support their attorney-client privilege withholdings. .................. 12

V.    Defendants fail to demonstrate that material withheld under Exemptions 6 and 7(C)
      is exempt. ...................................................................................................... 16

      A.   Defendants fail to satisfy their threshold burden under Exemption 7. ...................... 16

      B.   Defendants fail to justify their withholdings under Exemptions 6 and 7(C). ............ 18

           i.    Defendants fail to identify the privacy interests at stake. .................................... 18

           ii.   Defendants failed to balance the weighty public interests in disclosure. ............ 22

VI.   Defendants fail to satisfy the "foreseeable harm" standard with respect to their
      deliberative process privilege withholdings.......................................................... 23

VII.  Defendants' summary judgment motion should be denied as moot with respect to
      records and information they previously released to Plaintiffs. ...................................... 24

CONCLUSION...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*100Reporters v. Dep't of Just.*,
   248 F. Supp. 3d 115 (D.D.C. 2017) ................................................................... 25, 28

*100Reporters v. Dep't of State*,
   602 F. Supp. 3d 41 (D.D.C. 2022) ............................................................................ 32

*Advancement Project v. Dep't of Homeland Sec.*,
   549 F. Supp. 3d 128 (D.D.C. 2021) ................................................... 12, 13, 23, 31

*Am. C.L. Union v. Dep't of Just.*,
   655 F.3d 1 (D.C. Cir. 2011) ...................................................................................... 23

*Am. Ctr. for L. & Just. v. Dep't of Just.*,
   334 F. Supp. 3d 13 (D.D.C. 2018) ........................................................................... 22

*Am. Immigr. Council v. Dep't of Homeland Sec.*,
   950 F. Supp. 2d 221 (D.D.C. 2013) .................................................................. passim

*Am. Immigr. Council v. U.S. Customs & Border Patrol*,
   590 F. Supp. 3d 306 (D.D.C. 2022),
   *reconsideration denied*,
   No. CV 19-2965 (RC), 2023 WL 2755412 (D.D.C. Apr. 3, 2023) ............................. 11, 12, 31

*Augustus v. McHugh*,
   870 F. Supp. 2d 167 (D.D.C. 2012) .......................................................................... 11

*Bartko v. Dep't of Just.*,
   898 F.3d 51 (D.C. Cir. 2018) .................................................................................... 27

*Campaign for Responsible Transplantation v. F.D.A.*,
   219 F. Supp. 2d 106 (D.D.C. 2002) ............................................................................ 5

*Cause of Action Inst. v. Dep't of Justice*,
   330 F. Supp. 3d 336 (D.D.C. 2018) ................................................................... 19, 20

*Church of Scientology Int'l v. U.S. Dep't of Just.*,
   30 F.3d 224 (1st Cir. 1994) ......................................................................................... 2

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
   58 F.4th 1255 (D.C. Cir. 2023) ................................................................................. 26

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
   840 F. Supp. 2d 226 (D.D.C. 2012) .......................................................................... 26

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) ................................................................. 19

*Crooker v. State Dep't,*
    628 F.2d 9 (D.C. Cir. 1980) (per curiam) ............................................... 32

*Cuban v. S.E.C.,*
    744 F. Supp. 2d 60 (D.D.C. 2010) ..................................................... 16, 21

*Delaney, Migdail & Young, Chartered v. I.R.S,*
    826 F.2d 124 (D.C. Cir. 1987) .................................................................. 2

*Dep't of Justice v. Reps. Comm. for Freedom of the Press,*
    489 U.S. 749 (1989) ................................................................................ 27

*Dillon v. Dep't of Just.,*
    444 F. Supp. 3d 67 (D.D.C. 2020). ......................................................... 24

*Evans v. Fed. Bureau of Prisons,*
    951 F.3d 578 (D.C. Cir. 2020) .................................................................. 9

*Gutierrez-Soto v. Sessions,*
    317 F. Supp. 3d 917 (W.D. Tex. 2018) .............................................. 27, 28

*Heily v. Dep't of Defense,*
    896 F. Supp. 2d 25 (D.D.C. 2012),
    *aff'd,* No. 13-5055, 2013 WL 5975876 (D.C. Cir. Oct. 16, 2013) ......... 32

*Hunton & Williams LLP v. Env't Prot. Agency,*
    248 F. Supp. 3d 220 (D.D.C. 2017) ................................................. passim

*Inst. for Just. v. I.R.S.,*
    941 F.3d 567 (D.C. Cir. 2019) .................................................................. 7

*Jud. Watch v. Dep't of Homeland Sec.,*
    841 F. Supp. 2d 142 (D.D.C. 2012) ........................................................ 17

*Jud. Watch v. Dep't of Just.,*
    20 F.4th 49 (D.C. Cir. 2021) ................................................................... 15

*Jud. Watch v. F.B.I.,*
    No. CIVA 04-1643 (RWR), 2006 WL 3334996 (D.D.C. Nov. 16, 2006) ............................ 4, 6

*Judge Rotenberg Educ. Ctr. v. F.D.A.,*
    376 F. Supp. 3d 47 (D.D.C. 2019) .......................................................... 27

*Kimberlin v. Dep't of Just.*,
    139 F.3d 944 (D.C. Cir. 1998) ............................................................................... 26

*Kowalczyk v. Dep't of Just.*,
    73 F.3d 386 (D.C. Cir. 1996) ................................................................................. 10

*LaCedra v. Exec. Off. for U.S. Att'ys*,
    317 F.3d 345 (D.C. Cir. 2003) ................................................................................. 7

*Leopold v. I.C.E.*,
    560 F. Supp. 3d 189 (D.D.C. 2021) ......................................................................... 8

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ................................................................................. 4

*Morley v. C.I.A.*,
    508 F.3d 1108 (D.C. Cir. 2007) ............................................................................... 4

*Muttitt v. Dep't of State*,
    926 F. Supp. 2d 284 (D.D.C. 2013) .................................................................. 19, 20

*Nat'l Archives & Recs. Admin. v. Favish*,
    541 U.S. 157 (2004) ............................................................................................... 28

*Nat'l Pub. Radio v. Dep't of Homeland Sec.*,
    No. 1:20-CV-2468-RCL, 2022 WL 4534730 (D.D.C. Sept. 28, 2022),
    *dismissed sub nom.*
    *Nat'l Pub. Radio v. Dep't of Homeland Sec.*,
    No. 22-5311, 2023 WL 2717669 (D.C. Cir. Mar. 27, 2023) ................................. 30

*Nat'l Sec. Couns. v. C.I.A.*,
    960 F. Supp. 2d 101 (D.D.C. 2013) ....................................................................... 14

*New Orleans Workers' Ctr. for Racial Just. v. I.C.E.*,
    373 F. Supp. 3d 16 (D.D.C. 2019) ................................................................. passim

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ............................................................................... 32

*Phillips v. I.C.E.*,
    385 F. Supp. 2d 296 (S.D.N.Y. 2005) ................................................................... 22

*Prison Legal News v. Samuels*,
    787 F.3d 1142 (D.C. Cir. 2015) ............................................................................. 23

*Project on Gov't Oversight v. Dep't of Homeland Sec.*,
    No. 1:18-CV-2051-RCL, 2023 WL 2139380 (D.D.C. Feb. 21, 2023) ................... 31

*Reps. Comm. for Freedom of Press v. F.B.I.*,
No. CV 17-1701 (RC), 2022 WL 13840088 (D.D.C. Oct. 21, 2022)....................................27

*Reps. Comm. for Freedom of Press v. F.B.I.*,
877 F.3d 399 (D.C. Cir. 2017) ...................................................................................9

*Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*,
567 F. Supp. 3d 97 (D.D.C. 2021),
*appeal dismissed*,
No. 21-5293, 2022 WL 801357 (D.C. Cir. Mar. 15, 2022) ....................................28

*Reps. Comm. for Freedom of the Press v. F.B.I.*,
3 F.4th 350 (D.C. Cir. 2021) ............................................................... 14, 30, 31

*Schiller v. N.L.R.B.*,
964 F.2d 1205 (D.C. Cir. 1992) .................................................................. 3, 5

*Senate of the Com. of. P.R. on Behalf of Judiciary Comm. v. Dep't of Justice*,
823 F.2d 574 (D.C. Cir. 1987) ..............................................................................15

*Shapiro v. Cent. Intelligence Agency*,
247 F. Supp. 3d 53 (D.D.C. 2017) ...........................................................................1

*Swick v. Dep't of the Army*,
596 F. Supp. 3d 66 (D.D.C. 2022) ..........................................................................32

*Tokar v. Dep't of Just.*,
304 F. Supp. 3d 81 (D.D.C. 2018) ......................................................................2, 26

*Truitt v. Dep't of State*,
897 F.2d 540 (D.C. Cir. 1990) .........................................................................7, 8, 9

*Valencia-Lucena v. U.S. Coast Guard*,
180 F.3d 321 (D.C. Cir. 1999) ...............................................................................10

*Wilson v. F.C.C.*,
No. 21-CV-895-RMM, 2022 WL 4245485 (D.D.C. Sept. 15, 2022) ...................................32

**Statutes**

5 U.S.C. § 552..................................................................................................1

**INTRODUCTION**

Plaintiffs National Press Club Journalism Institute ("NPCJI") and journalist Kathy Kiely respectfully submit this reply in support of their Motion for Partial Summary Judgment, ECF No. 53, and in opposition to Defendants' Motion for Summary Judgment, ECF No. 52.

**ARGUMENT**

**I.     Defendants bear the burden of justifying their withholdings.**

It is well settled that under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, it is the agency's burden to justify each withholding with the specificity necessary to enable this Court's requisite "searching *de novo* review." *Shapiro v. C.I.A.*, 247 F. Supp. 3d 53, 62 (D.D.C. 2017) (quotation omitted).  Thus, while Defendants may bristle at the requirement that when "justifying their redactions . . . [they] must justify each one," ECF. No. 55, at 22, that is the law. And Defendants' related complaint that they are not permitted to "rely on a representative sample to justify their withholdings," *id.*, is likewise unwarranted.  This Court properly rejected their request to do so because records at issue are "not voluminous enough to support such a request." Minute Order dated Jan. 5, 2023.  Simply put, it is Defendants' indisputable burden to adequately justify their withholdings, both generally and as to particular exemptions[1]—a burden they have failed to meet.  Defendants' gripe that Plaintiffs "handpick[ed] specific examples" that clearly illustrate that failure, ECF No. 55, at 21, does not entitle them to summary judgment. Nor is it clear how a FOIA plaintiff can show the government's failures other than by pointing to "specific examples."[2]

_____

[1] Plaintiffs address specific exemptions *infra* at Sections IV–VI.
[2] Defendants' claim that their filings were made in good faith is neither here nor there.  ECF No. 55, at 26.  Plaintiffs have not asserted bad faith on Defendants' part, which is a separate issue from

II.   **Defendants' *Vaughn* index and supporting declarations fail to carry their burden**.

When an agency invokes an exemption, it must "provide the kind of detailed, scrupulous description of the withheld documents that enables a District Court judge to perform a *de novo* review." *Tokar v. Dep't of Just.*, 304 F. Supp. 3d 81, 89 (D.D.C. 2018) (cleaned up).   The government's supporting materials "may take any form so long as they give the reviewing court a reasonable basis to evaluate" their withholdings. *Delaney, Migdail & Young, Chartered v. I.R.S*, 826 F.2d 124, 128 (D.C. Cir. 1987).   The purpose of these filings *"*is to permit adequate adversary testing of the agency's claimed right to an exemption[.]" *Schiller v. N.L.R.B.*, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (quotation omitted) ("There is no excuse for submitting a *Vaughn* index that contains errors, even minor ones.").

Defendants "vehemently" contend that they satisfied their burden by filing a generic agency declaration and a *Vaughn* index that is lengthy, but incomplete, vague, and riddled with errors.   ECF No. 55, at 24–25.   According to Defendants, those two deficient filings are sufficient when "used in tandem." *Id.* at 19.   But Defendants' "difficulties arise not from its use of the combined approach, but from the lack of information provided in either the *Vaughn* index or its declarations." *Hunton & Williams LLP v. Env't Prot. Agency*, 248 F. Supp. 3d 220, 245 n.29 (D.D.C. 2017).   Whether separate or combined, Defendants' filings are deficient.

The insufficiency of Defendants' showing is most apparent as to records unaddressed in either their *Vaughn* index or declarations, which include records that lack Bates numbers or have

---

whether their *Vaughn* index and supporting declarations are sufficient. *See, e.g.*, *Church of Scientology Int'l v. Dep't of Just.*, 30 F.3d 224, 233 (1st Cir. 1994) ("A lack of bad faith on the part of the government . . . does not relieve it of its obligation in the first instance to provide enough information to enable the adversary process to operate in FOIA cases.").

overlapping numbers.  *See* Plaintiffs' Memorandum in Support of their Cross-Motion for Partial Summary Judgment ("Pls.' Mem."), ECF 53-1, at 18.  *See also* ECF 55-1, ¶¶ 32-34 (conceding these materials are not addressed).  Defendants ask Plaintiffs and the Court to <u>guess</u> their rationale for withholding certain documents.  ECF 55, at 22–23.  For example, Defendants claim that Exhibit 25, ECF No. 53-4, at 208–89—which has no Bates stamp and is thus impossible to correlate to the *Vaughn* index—was properly withheld under "<u>all</u> the civil discovery privileges that exist under Exemption 5."  ECF No. 55, at 22 (emphasis added).  But Exhibit 25 indicates only that it was withheld under Exemption 5, without further specificity, as do numerous other withheld documents.  *See, e.g.,* ECF No. 53-5, at 2, 105.  "[G]uesswork is not a proper foundation for a *de novo* review."  *Jud. Watch v. F.B.I.*, No. CIVA 04-1643 (RWR), 2006 WL 3334996, at *5 (D.D.C. Nov. 16, 2006).  And Defendants cite no authority to support the notion that Plaintiffs should be made to guess which privilege the government is invoking under Exemption 5.  Nor could they; it is Defendants' burden to "specifically identify[] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document[.]"  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).  Further, certain of these unaddressed records were withheld in their entirety, making even guesswork impossible.  *See, e.g.*, ECF No. 53-4, at 231–33; ECF 53-5 at 107–08.  Unlike in *Morley*, which Defendants frequently cite, ECF No. 55, at 20–23, there is not even a basic *Vaughn* entry to consult, much less one that conveys "enough information" for the Court to "identify the records" and "understand the basic reasoning behind the claimed exemptions."  *Morley v. C.I.A.*, 508 F.3d 1108, 1123 (D.C. Cir. 2007).

   For the records they do address, Defendants' *Vaughn* index and affidavit frequently "only provide a vague hint at the possible contents," *Campaign for Responsible Transplantation v. U.S.*

*F.D.A.*, 219 F. Supp. 2d 106, 112 (D.D.C. 2002), and in some cases no hint at all.  Defendants ask this Court to find nothing wrong with the conclusory, repetitive nature of their proffered justifications for withholdings, suggesting, for example, that it is perfectly acceptable for a *Vaughn* index to repeat the same uninformative sentence thirty times, ECF No. 55, at 21, even when it does not correspond to the records in question: "The agency contractors, officers and/or employees are making editorial comments, recommendations, or judgments, such as decisions to insert or delete material, and have a vested authority in their job duties and are in the chain of command of the parties involved in making the suggestions."  Pls.' Mem. 30.  *See, e.g.*, ECF 52-4, at 29 (describing the emails as "discussing the date for Emilio Gutierrez-Soto's immigration hearing and contemplating ERO's potential actions with respect to his further detention").  But far from seeking "phony individualization," ECF No. 55, at 21, Plaintiffs seek only the level of detail and accuracy this Court needs to review Defendants' withholdings *de novo*.  *Schiller*, 964 F.2d at 1209; s*ee also Hunton*, 248 F. Supp. 3d at 243 n.25 (document descriptions "suffered from a problem of vagueness, not just repetition.").  And while Defendants attempt to wave away what they call a "typo or two in the Pineiro declaration," ECF No. 55, at 25, they ignore Plaintiffs' multiple examples of substantive errors and inconsistencies, Pls.' Mem. 28–31, which "raise concerns about additional errors that may exist but are not detectable because of the limited information disclosed."  *Jud. Watch,* 2006 WL 3334996, at *7.

Here, as in past cases, "Defendants' *Vaughn* index and explanations of the withholdings are insufficient as a whole."  *Am. Immigr. Council v. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 237 (D.D.C. 2013) ("On these grounds alone, the Court must deny the Motion for Summary Judgment as to ICE's withholdings.").  *See also New Orleans Workers' Ctr. for Racial Just. v. I.C.E.*, 373 F. Supp. 3d 16, 70 (D.D.C. 2019) (denying summary judgment because ICE "failed to

provide sufficient information to allow the Court to conduct a de novo review of the withholdings").  Given these deficiencies in their supporting filings, Plaintiffs request that this Court deny Defendants' motion with respect to all the withholdings that Plaintiffs contest.

**III.**   **Defendants are not entitled to summary judgment as to the sufficiency of their search for records of mechanisms used to limit or block phone calls.**

As detailed in Plaintiffs' opposition, Defendants' summary judgment motion failed to establish the sufficiency of their searches as to two categories of records responsive to the Request: (1) text messages and (2) documents concerning "mechanisms used to limit or block phone calls" at the ICE facility.  Pls.' Mem. 18–26.  Effectively conceding that failure, in part, Defendants filed a supplemental declaration addressing their search for text messages.  ECF No. 55-2.  In view of the supplemental declaration, Plaintiffs do not contest the sufficiency of Defendants' search for text messages.  However, because Plaintiffs' request for documents concerning "mechanisms used to limit or block phone calls" is reasonably described, Pls.' Mem. 14–16, and ICE failed to conduct an adequate search for those records, Plaintiffs are entitled to summary judgment as to that issue.

FOIA does not require "technical precision" from requesters.  *Inst. for Just. v. I.R.S.*, 941 F.3d 567, 572 (D.C. Cir. 2019).  On the contrary, requesters are required only to "reasonably describe[]" the records they seek, such that "a professional employee of the agency who was familiar with the subject area of the request" can "locate the record with a reasonable amount of effort."  *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990) (citations omitted).  Agencies must interpret requests reasonably, not offer interpretations that are "implausible" or "so unreasonable as to raise the inference that the agency is not acting in good faith," even if the request is not a "model of clarity."  *LaCedra v. Exec. Off. for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003).  A request "certainly should not fail where the agency knew or should have known what

the requester was seeking all along." *Inst. for Justice*, 941 F.3d at 572.

Here, the Request sought, *inter alia*, records of "mechanisms used to limit or block phone calls from detainees at ICE's El Paso facilities" that mention or contain specific phone numbers and names. Pls.' SMF ¶13. Defendants argue that this portion of the Request is "unintelligible." ECF No. 55, at 13. That argument is belied not only by the evidence Plaintiffs introduced in support of their motion, but also by Defendants' own supplemental declaration, which avers:

> To provide further detail on ICE's inquires, on or about May 2020, ICE Agency counsel contacted a Deputy Field Office Director (DFOD) at the ERO El Paso Field Office to inquire whether there are any mechanisms used to limit or block detainee phone calls. During the brief conversation the DFOD explained the telephone service is provided by a third-party contractor and he wasn't aware of a telephone service operation manual that could be reviewed to verify whether detainee's calls can be limited or blocked.

ECF No. 55-2 ¶19.

As of May 2020, then, ICE was not mining dictionaries for all potential definitions of "mechanism" in an attempt to ascertain what Plaintiffs could possibly have been asking for. ECF No. 55, at 8–10. On the contrary, the DFOD—i.e., a "a professional employee of the agency who was familiar with the subject area of the request," *Truitt*, 897 F.2d at 545 n.36—knew exactly what information was being sought and responded with concrete information—including an example of one potentially responsive document to search for, i.e., "a telephone service operation manual." ECF No. 55-2 ¶19. Thus, despite Defendants' claim to this Court that the Request is "unintelligible," ECF No. 55, at 18, the DFOD understood it in May 2020. And Plaintiffs' counsel later provided additional context, including relevant information from ICE detention standards, a Government Accountability Office report, news reports, and a pending federal lawsuit. Pls.' Mem. 15. The "brief conversation" mentioned in the supplemental declaration, combined with Defendants' counsel's discussion of ICE's "understanding" of the Request, ECF No. 53-4, at 101,

belies Defendants' specious claim that it did not reasonably describe the records being sought.

*Leopold*, which the government relies on, ECF 55, at 16, is inapposite. That decision concerned a FOIA request for videos and photographs "of any and all immigration enforcement actions." *Leopold v. I.C.E.*, 560 F. Supp. 3d 189, 198 (D.D.C. 2021). Since "any *action* taken by an *Immigration* and Customs *Enforcement* official is, in some sense, an 'immigration enforcement action,'" the request was found to be impermissibly vague. *Id.* at 200 (emphasis in original). Here, however, despite Defendants' effort to conjure infinite potential "mechanisms" for purposes of their briefing to this Court, ECF No. 55, at 14–15, "mechanisms used to limit or block phone calls" is subject to a reasonable, clear, interpretation—one that the DFOD understood and, as a result, was able to suggest a useful starting point to search for responsive records: a "telephone service operation manual," if one existed. ECF No. 55-2 ¶19. Unlike in *Leopold*, where the subject-matter universe was near infinite, here the Request provided sufficient context for the DFOD and other "professional employee[s] of the agency" to conduct a search. *Truitt*, 897 F.2d at 545 n.36.

The record is clear that the Request, in fact, reasonably described the records sought and that ICE has failed to meet its "burden of demonstrating the adequacy of its search." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020). Accordingly, to prevail on summary judgment, Defendants must show they "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," which they can do by "submitting a reasonably detailed affidavit." *Reps. Comm. for Freedom of Press v. F.B.I.*, 877 F.3d 399, 402 (D.C. Cir. 2017) (cleaned up). However, "summary judgment is inappropriate" if "a review of the record raises substantial doubt" as to the search's adequacy, "particularly in view of well defined requests and positive indications of overlooked materials." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quotation

and citation omitted).

Defendants devote a single throwaway sentence to the adequacy of their search for records in response to this portion of the Request.  ECF No. 55, at 12.  Far from "reasonably detailed," Defendants' affidavit itself provides "positive indications of overlooked materials."  *Valencia-Lucena*, 180 F.3d at 326.  The DFOD identified a promising source—a "telephone service operation manual"—but Defendants aver only that the DFOD told ICE counsel that he "wasn't aware of" one.  ECF No. 55-2 ¶19.  Defendants do not show that the DFOD (or anyone else) actually attempted to determine whether or not this manual existed, much less conducted a search to identify any other potentially responsive documents.  *See Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996) (agencies must pursue "a lead that is both clear and certain").

## IV.   Defendants fail to demonstrate that material withheld under Exemption 5 is exempt.

### A.   Defendants concede they improperly withheld a record that does not qualify as inter- or intra-agency memoranda.

Defendants do not explain why they withheld at least one document—Pls.' Mem. 23—that does not meet Exemption 5's threshold requirement.  Accordingly, Plaintiffs are entitled to summary judgment as to this document.  *See Augustus v. McHugh*, 870 F. Supp. 2d 167, 172 (D.D.C. 2012) ("[A]ny unanswered arguments may be treated as conceded").

### B.   Defendants fail to support their deliberative process privilege withholdings.

Defendants understate the "heightened requirement for specificity" in the deliberative process privilege context, *Hunton*, 248 F. Supp. 3d at 243, and provide insufficient information for the Court to find that witphheld documents are both deliberative and predecisional.

#### i.   Defendants fail to show that withheld records are "deliberative."

As this Court has explained, "Defendants' briefing must leave the Court with a clear

8

understanding of what deliberative process is asserted and the relationship between the document and that deliberative process." *Am. Immigr. Council v. U.S. Customs & Border Patrol*, 590 F. Supp. 3d 306, 326 (D.D.C. 2022), *reconsideration denied*, No. CV 19-2965 (RC), 2023 WL 2755412 (D.D.C. Apr. 3, 2023).  There are four specific elements Defendants must address: (1) "what deliberative process is involved"; (2) "the role played by the documents in issue in the course of that process"; (3) the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document"; and (4) "the relative positions in the agency's chain of command occupied by the document's author and recipient." *Id.* at 324 (cleaned up).

As Plaintiffs demonstrate, Pls.' Mem. 33–34, Defendants fail to show even the first element.  They offer no response to Plaintiffs' many examples of amorphous *Vaughn* entries that refer, for example, to "coordination of potential ERO action" and "ERO's response to the court decision," *id.*, without concretely identifying any "particular decisionmaking process." *Hunton*, 248 F. Supp. 3d at 242.  *See also* ECF 52-4, at 89 ("The email proposes ERO take certain action"); *id.* at 93 ("pre-coordinating potential ERO action").[3]  Since ICE has failed to "identify a decisionmaking process the [record] contributed to," it has failed "to demonstrate that the deliberative process privilege protects [it]." *Advancement Project v. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 142 (D.D.C. 2021).

Defendants also fail to show the second element; nowhere do their submissions identify "the role played by the documents in issue in the course of that [deliberative] process." *Am. Immigr. Council*, 590 F. Supp. 3d at 324.  One of the clearest examples is an email in which the

[3] Two of these vague "certain action" explanations refer to an "email" when the actual record at issue is an Excel spreadsheet. *See* ECF 52-4, at 101–02.

Acting Field Office Director ("FOD"), according to the *Vaughn* index, "clarifies the procedural history [of] Emilio Gutierrez-Soto's request for asylum as it relates to his detention status and suggests information that should be included in future press releases." ECF 52-4, at 57; Pls.' Mem. 35. Defendants attempt to defend the withholding of this factual material on the ground that "the agency was trying to decide what to put in future press releases." ECF No. 55, at 28. But the *Vaughn* index is murky, at best, as to the connection between the withheld factual material and any such deliberations about the content of future press releases. Instead, the *Vaughn* index states that the emails "contemplate whether certain information from the Immigration Judge's opinion . . . should be disclosed in an ICE Press Release." ECF 52-4, at 57. What role the withheld "procedural history" played in such "contemplat[ion]" is unclear, particularly since "procedural history" encompasses more than the "Immigration Judge's opinion." *Id.* Although Defendants argue somewhat similar material was properly withheld in *Advancement Project*, 549 F. Supp. 3d at 139, Defendants here fail to sufficiently articulate what role—if any—this factual information played in any deliberative, decisionmaking process.

Defendants also fail to show the third and fourth elements by declining to "provide explicit information regarding the parties to these documents," including their respective positions and decisionmaking authority. *New Orleans Workers' Ctr.*, 373 F. Supp. 3d at 53 (quotation omitted). Defendants contend this information is "readily apparent" from their filings and the withheld documents themselves. ECF No. 55, at 29. But, as Plaintiffs argue, it is unclear—and Defendants do not explain—how the Court could possibly derive it from, for example, a *Vaughn* entry that fails to identify the relevant "ICE employees," or from a document in which all information about the parties is redacted except for the title of one participant. Pls.' Mem. 35.

As Plaintiffs acknowledge, Defendants do include titles of certain individuals in certain of

10

their *Vaughn* index entries, *id.*, but it is still far from "readily apparent"—even with some individuals' titles—what "the nature of [their] decisionmaking authority" is. *Hunton*, 248 F. Supp. 3d at 244. *See New Orleans Workers' Ctr.*, 373 F. Supp. 3d at 53 (explaining that entries were insufficient even though some provided "the titles of certain [ICE] individuals"); *Nat'l Sec. Couns. v. C.I.A.*, 960 F. Supp. 2d 101, 191 (D.D.C. 2013) (denying summary judgment where agency gave certain officers' titles but failed to "say what decisionmaking authority is vested in" them). In the case Defendants cite, the decisionmaking authority was "evident from the record" because the relevant officials were the FBI Director and other FBI personnel within a clear organizational structure. *Reps. Comm. for Freedom of the Press v. F.B.I.*, 3 F.4th 350, 368 (D.C. Cir. 2021). Here, Defendants claim that <u>all</u> ICE personnel's authority and rank are "readily apparent," even if their titles are not provided, or if they are described generically as "ICE attorneys" (ECF 52-4 at 161), "ICE officials" (*id.* at 165), or "ICE Public Affairs Officers" (*id.* at 52).

ii.     <u>Defendants fail to show that withheld records are "predecisional."</u>

To conclude that withheld records are predecisional, i.e., "generated before the adoption of an agency policy," *Jud. Watch v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021) (quotation omitted), a "court must be able to pinpoint an agency decision or policy *to which the document contributed.*" *Senate of the Com. of. P.R. on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (emphasis added) (quotation omitted). "Predecisional" records also may "document[] ongoing internal debates and deliberations." *Reps. Comm.*, 3 F.4th at 364. Defendants fail to satisfy these standards.

For example, Defendants emphasize that they withheld one portion of an email pertaining to "why Mr. Gutierrez-Soto's health information was withheld or disclosed in response to an inquiry from Congressman Beto O'Rourke." ECF No. 55, at 30. By doing so, perhaps unwittingly,

Defendants underscore that they withheld a *post*-decisional record: the AFOD was discussing an action already taken in response to this inquiry from a member of Congress.  Pls.' Mem. 37.[4]

Far from supporting their withholdings, Defendants' arguments underline the holes in their proffered showing—a showing that does not satisfy their "heightened requirement for specificity in the context of the deliberative process privilege."  *Hunton*, 248 F. Supp. 3d at 243.  Summary judgment should be denied as to all withholdings pursuant to the deliberative process privilege.

### C.   Defendants fail to support their attorney-client privilege withholdings.

For "*each* withholding" under the attorney-client privilege, the government "must submit a sufficiently detailed and particularized description" that "meets the D.C. Circuit's long-established evidentiary requirements."  *Am. Immigr. Council*, 950 F. Supp. 2d at 244 (D.D.C. 2013) (emphasis in original) (citations omitted).  "The attorney-client privilege is not applicable just because the defendant states that it applies" based on "nothing more than conclusory assertions and blanket affirmations."  *Cuban v. S.E.C.*, 744 F. Supp. 2d 60, 79 (D.D.C. 2010) (rejecting government declaration that failed to address whether confidentiality was maintained).  And where, as here, "no factual support is provided for an *essential* element of the claimed privilege," "the label 'conclusory' is surely apt."  *Senate of the Com. of P.R.*, 823 F.2d at 585 (emphasis in

---

[4] In attempting to defend another withholding, Defendants highlight their failure to establish the document was subject to the deliberative process privilege and also highlight how much missing information Plaintiffs filled in for the Court's review.  ECF No. 55, at 24–25.  Defendants withheld part of an email in which the Acting Field Office Director circulated "signed stay denials," as a released portion of the email indicates.  Pls.' Mem. 37.  By contrast, the corresponding *Vaughn* index entry describes the email thread as being sent "between ICE employees" (rank and title unspecified) regarding "steps on what to take next, after the final stay order had been ruled on, as deliberation in what the agency should do next in the case."  ECF No. 52-4, at 162.  Unlike Plaintiffs' detailed challenge, therefore, Defendants' filings offered no clear indication as to participants' identities and authority, much less what deliberative process was in play beside "what the agency should do next."

original).  "[C]onfidentiality both at the time of the communication and maintained since" is a "fundamental prerequisite to the assertion of the privilege."  *Jud. Watch v. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 154 (D.D.C. 2012) (quotation and citation omitted).

Here, Defendants fail to demonstrate confidentiality, an essential element of attorney-client privilege.  Contrary to Defendants' apparent view, merely invoking the word "confidential" in a declaration is insufficient.  ECF No. 55, at 32.  Because confidentiality has a temporal dimension and can be lost or waived, the government must "prove that the underlying information in each document was initially kept secret <u>and remains so</u>."  *Am. Immigr. Council*, 950 F. Supp. 2d at 244 (citation omitted) (emphasis added).  Their declaration fails to aver, even generically, that confidentiality has been maintained.  Pls.' Mem. 39*; see also Hunton*, 248 F. Supp. 3d at 254 (rejecting declaration as insufficient to demonstrate that confidentiality was maintained).  Their *Vaughn* index likewise fails to address this "fundamental prerequisite" to confidentiality.  *Jud. Watch*, 841 F. Supp. 2d at 154.  *See* Pls.' Mem. 39.

Defendants contend that by examining the *Vaughn* index and the documents themselves, the Court "could easily see that the communications were confidential, i.e., there were no third parties present to break the privilege."  ECF No. 55, at 33.  But it is manifestly improper for Defendants to ask the Court to make an "unjustified assumption" about a document's confidentiality based only on a brief description—or even on an examination of the record: "Even if FOIA authorized the courts to make such findings based upon an *in camera* review of the documents alone, Defendants would still be asking too much."  *Am. Immigr. Council*, 950 F. Supp. 2d at 244 (rejecting government's argument that application of the privilege was "plainly evident by the descriptions, and in some cases, the titles of the documents").  Defendants must give the Court sufficient information to assess whether the privilege applies—not merely direct the Court

to assume so despite having no "independent knowledge" of the factual circumstances.  *Id.*

Even if it was proper for Defendants to expect this Court to search the records and *Vaughn*

index for evidence of confidentiality, the Court could not "easily see" whether there were "third

parties present."  ECF No. 55, at 33.  For example, Defendants point to this *Vaughn* entry:

> The information being withheld under (b)(5) constitutes attorney client privileged
> information. This e-mail communication is from an OPLA attorney explaining the BIA's
> interim order and how it impacts Emilio Gutierrez-Soto's detention to an ERO Assistant
> Field Operations Director.
> . . .
> This email communication from OPLA attorney to client ERO Assistant Field Office
> Director is an explanation of the Interim BIA's order as it impacts continued detention of
> Emilio Gutierrez-Soto.

ECF 52-4, at 12.  *See also* ECF No. 55, at 33.  Based on this description, one might assume there

were only two participants on the e-mail chain: the attorney and the Assistant FOD.  But that is

not the case.  Absent from the *Vaughn* index is any mention of the numerous other recipients of

that e-mail—at least six were cc'd, per the redactions.   *See* Musgrave Supp. Decl. Ex. 1.

Defendants redacted all these recipients' names and some of their domain addressees, so it is

impossible to know who these unidentified recipients are, much less determine whether the

withheld information was "circulated no further than among those members of the organization

who are authorized to speak or act for the organization in relation to the subject matter of the

communication." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)

(quotation omitted).  *Compare also* ECF 52-4, at 37 (describing emails "between ICE ERO Officer

in Charge and an OPLA attorney") with Musgrave Supp. Decl. Ex. 2 (records with redactions

indicating there were other, unidentified recipients).  Thus, contrary to Defendants' argument that

their *Vaughn* index allows the Court to "easily see" whether records were originally (and were

kept) confidential, the relevant information is missing or obscured.

Defendants also fail to show that "securing legal advice was a primary purpose of the agency's communication." *Cause of Action Inst. v. Dep't of Justice*, 330 F. Supp. 3d 336, 347 (D.D.C. 2018) (quotation omitted). "It is [the government's] burden to show that this <u>particular</u> communication involved a request for legal advice," "rather than, for example, political, strategic, or policy issues." *Id.* at 348 (cleaned up; emphasis in original). Neither Defendants' declaration nor their *Vaughn* index offers sufficient information for the Court to determine, for each withholding, "the nature of the legal issue or issues for which advice was being sought and whether the withheld e-mails seek legal advice, convey legal advice, or both." *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 309 (D.D.C. 2013). Pls.' Mem. 39–40. Instead, Defendants simply assert that the Court "can see by examining the *Vaughn* index that ICE has properly asserted the privilege throughout." ECF No. 55, at 33. But many entries offer no explanation as to the role played by an attorney. For emails about whether and how to respond to a reporter, for example, ICE *Vaughn* at 20, the entry does not explain how "this <u>particular</u> communication involved a request for legal advice." *Cause of Action*, 330 F. Supp. 3d at 348 (emphasis in original). And, even if one consults the records themselves, it remains unclear whether ICE counsel participated in any capacity beyond helping workshop a media statement. *See* Musgrave Supp. Decl. Ex. 3. Other *Vaughn* entries similarly indicate that ICE counsel participated in responding to press inquiries or drafting press releases without explaining "whether the withheld e-mails seek legal advice, convey legal advice, or both." *Muttitt*, 926 F. Supp. 2d at 309. *See, e.g.*, ECF 52-4, at 79, 83.

Defendants argue it is sufficient to indicate that a withheld communication contains an ICE attorney's "explanation" of a court order to a public affairs officer drafting a "public statement." ECF No. 55, at 34; ECF 52-4 at 77. But the fact that "a conversation has some legal nexus is insufficient: the party seeking the protection of the attorney-client privilege must show that

securing legal advice was a primary objective." *Cause of Action*, 330 F. Supp. 3d at 349 (quotation omitted).  ICE has failed to "supply any details to demonstrate that agency counsel acted in a professional legal capacity" when included in these communications, "as opposed to a managerial or other capacity," and thus has not "discharge[d] the government's burden for proof." *Am. Immigr. Council*, 950 F. Supp. 2d at 244 (citation omitted). "Simply, the defendant must provide more information from which the Court can assess whether the attorney-client privilege was properly asserted." *Cuban*, 744 F. Supp. 2d at 79.

**V.     Defendants fail to demonstrate that material withheld under Exemptions 6 and 7(C) is exempt.**

**A.     Defendants fail to satisfy their threshold burden under Exemption 7.**

Though law enforcement agencies are entitled to "a measure of deference" when it comes to demonstrating that a record was compiled for law enforcement purposes, the standard "is not a vacuous one, and it does not authorize a wholesale departure from all evidentiary requirements." *Am. Immigr. Council*, 950 F. Supp. 2d at 245 (quotation omitted).  If the "explanatory documents fail to supply facts in sufficient detail," then "the reviewing court cannot grant summary judgment in the agency's favor." *Id.* (quotation omitted).

Rather than supply any additional facts to support their invocation of Exemption 7, Defendants contend that their declaration and *Vaughn* Index are sufficient as-is.  ECF No. 55, at 36.  They make no response to the fact that the Pineiro Declaration offers only the kind of generic language—copied verbatim from a prior declaration—that previously has been rejected as improper.  Pls.' Mem. 41 (collecting cases).

Instead, Defendants sweepingly argue that the Court can infer "that a record was compiled for a law enforcement purpose" by "comparing the declaration, the *Vaughn* index, and the

16

document at issue." ECF No. 55, at 36. The Court should "decline to physically examine each withheld document and attempt to discern for itself whether the documents satisfy Exemption 7's threshold requirement," as it is Defendants' burden to supply the necessary information to permit *de novo* review. *New Orleans Workers' Ctr.*, 373 F. Supp. 3d at 57 (cleaned up).

In any event, if the Court examines ICE's *Vaughn* index, it will find Defendants made "no attempt to address the specific law enforcement purpose of the withheld documents." *Id.* at 56. Instead, Defendants argue that each one of the "thousands of records produced in this case" self-evidently satisfies the Exemption 7 threshold since they all "pertain to the immigration enforcement proceedings of Emilio and Oscar Gutierrez-Soto." ECF No. 55, at 36–37. Citing no authority for such a sweeping proposition, Defendants simply ignore countervailing authority making clear that documents compiled for the purpose of communicating with the press and Congress fall outside the scope of Exemption 7. *See New Orleans Workers' Ctr.*, 373 F. Supp. 3d at 56–57 (stating that "responses to media inquiries" lacked a clear connection to law enforcement purpose); *Am. Ctr. for L. & Just. v. Dep't of Just.*, 334 F. Supp. 3d 13, 18–19 (D.D.C. 2018) (explaining that government failed to satisfy Exemption 7 threshold for email "related to a media inquiry"); *Phillips v. I.C.E.*, 385 F. Supp. 2d 296, 306 (S.D.N.Y. 2005) ("Since the report in question was prepared for Congress, this exemption is unavailable to defendant.").

In short, "[n]otwithstanding [the] backdrop of deference, ICE must still demonstrate that the records at issue were compiled for law enforcement purposes." *Advancement Project*, 549 F. Supp. 3d at 144. Defendants have failed to satisfy that threshold burden and the Court should deny summary judgment as to all of Defendants' Exemption 7(C) withholdings.

**B.    Defendants fail to justify their withholdings under Exemptions 6 and 7(C).**

Contrary to Defendants' characterization, Plaintiffs do "genuinely challenge that names and identifying information withheld from the records produced are exempt under Exemptions 6 and 7(C)." ECF No. 55, at 38. As Plaintiffs clearly argued, they are entitled to summary judgment as to the redactions of the names of "high-ranking and/or public facing officials who have no discernible privacy interest because their identities are already public." Pls.' Mem. 45. Further, Defendants have not met their burden to identify for the Court the individual privacy interests at stake, Pls.' Mem. 43–44, as opposed to merely claiming they properly weighed the interests.

i.    Defendants fail to identify the privacy interests at stake.

Defendants appear to misunderstand their burden, which is to provide the Court with sufficient information to determine *de novo* whether there are any privacy interests at stake. *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) ("To apply exemption 6, a court must first determine whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." (citations and internal quotation marks omitted)); *Am. C.L. Union v. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("The first question we must ask [in evaluating Exemption 7(C) claims] is whether there is any privacy interest at stake."). The government may sometimes provide this information on a categorical basis, but it must still provide sufficient information to the Court. *See, e.g.*, *New Orleans Workers' Ctr.*, 373 F. Supp. 3d at 60 (finding ICE failed to support its categorical withholdings).

Defendants have failed to do so. They principally rely on *Dillon v. Department of Justice*, in which the Court found that the FBI had adequately demonstrated the privacy interests at stake. 444 F. Supp. 3d 67, 96-101 (D.D.C. 2020). In its supporting filings, the FBI had addressed the respective privacy interests of granular subgroups, including (1) individuals "merely mentioned"

18

in a specific scientist's lab notebook and correspondence; (2) FBI personnel who were involved in a particular investigation; and (3) non-FBI federal personnel who aided in that investigation. *Id.* And it provided sufficiently detailed information to allow the Court to evaluate the privacy interests for individuals in each category. *Id.* at 99−100.

In contrast, here, Defendants offer virtually no detail about the subgroups and their potential privacy interests. Pls.' Mem. 43–44. The subgroups are not even consistent or clear. The Pineiro Declaration identifies two incredibly broad subgroups: (1) "federal employees" who "assist ICE with its law enforcement mission"; and (2) "non-ICE individuals, such as DOJ attorneys." ECF No. 52-2, ¶¶ 88-90. The *Vaughn* index most frequently divides individuals into "ICE employees" and "third-party individuals." *See, e.g.*, ECF 52-4 at 2. As Defendants point out, the *Vaughn* index also "sometimes" lumps the privacy interests of "ICE and DOJ employees" together, ECF No. 55, at 39, which conflicts with their declaration's ICE-vs-non-ICE categories. And, as expected, the "third-party" category is incredibly broad, encompassing everyone from "reporters" ECF 52-4 at 2, to "the immigration judge, private bar attorneys and witnesses," *id.* at 28. Sometimes the "third-party individuals" at issue are not described at all. *Id.* at 59. Rather than drill into these broad categories any further to articulate the divergent privacy interests for the Court, Defendants argue it is "apparent" from their filings "that ICE first identified the individual in the document" and "determined the individual's privacy interests." ECF No. 55, at 39. But that is far from "apparent"; there is simply no evidence whatsoever of this analysis. By failing "to differentiate the privacy interests of different individuals, or even different groups," ICE has failed "to justify [its] categorical approach[,]" which, in turn, "is fatal to its withholdings." *100Reporters v. Dep't of Just.*, 248 F. Supp. 3d 115, 163 (D.D.C. 2017).

This failure is most glaring for Defendants' withholdings of the names of high-ranking and

public-facing ICE officials whose identities are already widely known, and who thus have minimal (if any) privacy interest.  Pls.' Mem. 44−47.  For one of these officials, ICE spokeswoman Leticia Zamarripa, Defendants inexplicably tout that they sometimes release her name "because her job requires her to be public facing," ECF No. 55, at 42, without explaining why they redact her name elsewhere.  Pls.' Mem. 46-47.  They also make no attempt to differentiate her supposed privacy interests from those of another public-facing spokesperson, Carl Rusnok, whose name also is inconsistently redacted.  *Id.*

        More fundamentally, Defendants improperly conflate the question of whether these officials retain any privacy interest in their identities—that is, in information that is already public knowledge—with whether Plaintiffs have satisfied the public-domain test.  ECF No. 55, at 42−44.  These are separate questions.  The public-domain test is used to determine whether the government has waived applicable exemptions as to a given record based on an official disclosure.  *See generally Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 58 F.4th 1255, 1271 (D.C. Cir. 2023).  By contrast, courts evaluating privacy-based withholdings have found officials "have *no privacy interest* in information" that is "already a matter of public record," including through press coverage and other sources, such that no privacy exemption applies.  *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 840 F. Supp. 2d 226, 233 (D.D.C. 2012) (emphasis added)*; see also Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998) (stating that an official's "statement to the press undoubtedly does diminish his interest in privacy").  In addition to press coverage, this Court and others have found that the fact that an official's name appears in dockets and other "public court filings" undercuts any privacy interests.  *Tokar*, 304 F. Supp. 3d at 101 (finding DOJ attorneys lacked "even a modest privacy interest in their anonymity" due to identification in court filings).  And, when doing so, this Court has analyzed separately whether the public-domain test

was met and whether individuals' identities and relationship to a given subject matter were "publicly available information." *Reps. Comm. for Freedom of Press v. F.B.I.*, No. CV 17-1701 (RC), 2022 WL 13840088, at *5 (D.D.C. Oct. 21, 2022).

Instead of addressing Plaintiffs' argument—that certain ICE officials have no privacy interest because their identities are already public knowledge—Defendants argue that the public-domain test is not met. ECF No. 55, at 42–44. Defendants miss the mark. It is an indisputable matter of public record that Acting FOD William Joyce was closely involved in Mr. Gutiérrez's case, Pls.' Mem. 45—a fact that "substantially diminishe[s]" any asserted privacy interest in Joyce's identity. *Bartko v. Dep't of Just.*, 898 F.3d 51, 69 (D.C. Cir. 2018). *See also Dep't of Justice v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 763 n.15 (1989) ("[T]he interests in privacy fade when the information involved already appears on the public record.") (quotation omitted); *Judge Rotenberg Educ. Ctr. v. F.D.A.*, 376 F. Supp. 3d 47, 73 (D.D.C. 2019) (explaining that agency "fail[ed] to take a nuanced approach" to "Exemption 6 balancing analysis" by omitting relevant context, such as "speaking with media outlets"). Defendants do not address how other high-ranking and/or public-facing officials retain any privacy interest, particularly when they have already been publicly identified as involved with Mr. Gutiérrez's case. Pls.' Mem. 44–47.

Because Defendants raise the public-domain test, it bears noting that at least some of Plaintiffs' sources do, in fact, satisfy that test (although need not, as explained above). Defendants ignore the fact that Joyce was named on the public docket in Mr. Gutiérrez's habeas litigation and was identified by name and title in the district court's order in that case. *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018). At minimum, this passes muster as material in the "public domain" that is not subject to withholding. *See, e.g.*, *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 127 (D.D.C. 2021), *appeal dismissed*, No.

21-5293, 2022 WL 801357 (D.C. Cir. Mar. 15, 2022) (finding agents' names were in public domain because they "appeared on the Twitter summons and in the subsequent litigation"). Whether because Joyce's identity is solidly in the "public domain" or because he has no discernible private interest in it, Defendants cannot withhold it.

ii.    <u>Defendants failed to balance the weighty public interests in disclosure.</u>

Because Defendants fail to establish "the different privacy interests at stake," it is "impossible for the Court to balance the private interests with the public's interest in knowing what their government is up to." *100Reporters*, 248 F. Supp. 3d at 165 (quotation omitted). Nonetheless, and contrary to Defendants' argument, Plaintiffs have met their burden of showing an overwhelming public interest in disclosure of ICE officials' identities. ECF No. 55, at 34. Under *Favish* and its progeny, Plaintiffs may offer credible allegations of government misconduct and impropriety such as those raised by, among others, free press organizations and some members of Congress regarding ICE's treatment of Mr. Gutiérrez. *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 173 (2004); Pls.' Mem. 46–47. <u>And, here, a federal district court already found "enough evidence to create a genuine issue of material fact regarding whether [DHS and ICE officials] retaliated against [Mr. Gutiérrez and his son]" based on Mr. Gutiérrez's political speech</u>. *See Gutierrez-Soto*, 317 F. Supp. 3d at 934 (emphasis added). Defendants' suggestion that Plaintiffs must offer more than a district court's measured assessment that there is "enough evidence" to support a claim that the government may have retaliated against Mr. Gutiérrez, ECF No. 55, at 34–35, is unavailing. The public's interest in knowing the identities of the ICE officials who allegedly retaliated against a journalist for his speech necessarily overwhelms any minimal privacy interest these officials might maintain.

22

## VI.    Defendants fail to satisfy the "foreseeable harm" standard with respect to their deliberative process privilege withholdings.

The foreseeable harm standard imposes an "independent and meaningful burden on agencies." *Reps. Comm.*, 3 F.4th at 369 (quotation omitted).  To meet that burden, "agencies cannot rely on mere speculative or abstract fears" or proffer only "generalized assertions." *Id.* (cleaned up).  In the deliberative process context, "what is needed is a focused and concrete demonstration of why disclosure of the <u>particular</u> type of material at issue will, in <u>the specific context</u> of the agency action at issue, <u>actually impede</u> those same agency deliberations going forward.  Naturally, this inquiry is context specific." *Id.* at 370 (emphasis added).

Here, Defendants have offered nothing more than "generalized assertions." *Id.* at 369.  As Plaintiffs previously pointed out, their *Vaughn* index repeats two conclusory justifications dozens of times.  Pls.' Mem. 50.  Far from offering context-specific articulations of foreseeable harm as to particular documents, the *Vaughn* index provides the same generic justification—that disclosure would "discourage the expression of candid opinions"—for, among other documents, emails regarding: draft press releases (ECF 52-4 at 15–16); whether to grant Gutiérrez humanitarian parole (*id.* at 17); allegations in a congressional inquiry (*id.* at 30); logistics of joining immigration proceedings (*id.* at 46); giving ERO Headquarters advance notice of future actions (*id.* at 71); and potential facility transfers (*id.* at 74).  If ICE is permitted to recycle the same boilerplate language, no matter the subject matter or type of document, then FOIA's foreseeable harm "requirement would be so easy to evade as to be essentially dead letter." *Nat'l Pub. Radio v. Dep't of Homeland Sec.*, No. 1:20-CV-2468-RCL, 2022 WL 4534730, at *8 (D.D.C. Sept. 28, 2022), *dismissed sub nom. Nat'l Pub. Radio v. Dep't of Homeland Sec.*, No. 22-5311, 2023 WL 2717669 (D.C. Cir. Mar. 27, 2023).

Defendants argue that this Court and others have found that the "disclosure of similar information would cause foreseeable harm."  ECF No. 55, at 48.  But the fact that courts in other cases have found that an agency carried its "meaningful burden" under the foreseeable harm standard as to particular records does not mean Defendants have carried that burden here—even if the records contain "similar information."  In *Advancement Project*, this Court found, based on more detailed evidentiary submissions than what is before the Court here, that the government satisfied its burden as to particular records—an issue the plaintiffs did not contest.  549 F. Supp. 3d at 139.  In *Reporters Committee*, the D.C. Circuit found the government satisfied the foreseeable harm standard as to some records but not for others where it produced nothing but "a series of boilerplate and generic assertions."  3 F.4th at 370.  *See also Project on Gov't Oversight v. Dep't of Homeland Sec.*, No. 1:18-CV-2051-RCL, 2023 WL 2139380, at *9 (D.D.C. Feb. 21, 2023) (reasoning that DHS failed to satisfy foreseeable harm requirement where "[e]ach *Vaughn* index entry expresses this same [vague] justification").  Tellingly, Defendants have no response to Plaintiffs' argument that they cannot satisfy the foreseeable harm requirement for certain of their withholdings, such as one near-final draft media statement, which this Court offered as "an obvious example" where "identifying the precise harm that disclosure would cause could be extremely difficult."  *Am. Immigr. Council*, 590 F. Supp. 3d at 334.  Pls.' Mem. 50.  For this reason, too, Defendants are not entitled to summary judgment as to their deliberative process privilege withholdings.

**VII.    Defendants' summary judgment motion should be denied as moot with respect to records and information they previously released to Plaintiffs.**

Defendants' exemption claims are moot as to records and portions thereof that they already disclosed.  As the D.C. Circuit has explained: "Once the records are produced the substance of the

controversy disappears and becomes moot since the disclosure which the suit seeks has already been made." *Crooker v. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980) (per curiam).  *See also Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) (stating that the court had "no further judicial function to perform under the FOIA"); *Swick v. Dep't of the Army*, 596 F. Supp. 3d 66, 73 (D.D.C. 2022) (agreeing with government that case was moot as to disclosed documents); *Heily v. Dep't of Defense*, 896 F. Supp. 2d 25, 37 (D.D.C. 2012), *aff'd,* No. 13-5055, 2013 WL 5975876 (D.C. Cir. Oct. 16, 2013).

Attempting to resuscitate its moot arguments, Defendants cite a single, nonbinding case in which the government sought a protective order.  ECF No. 55, at 48 (citing *Wilson v. F.C.C.*, No. 21-CV-895-RMM, 2022 WL 4245485 (D.D.C. Sept. 15, 2022)).  Here, of course, Defendants have not sought a protective order from the Court as to these previously disclosed records.  And it remains unclear what relief, if any, Defendants seek with respect to those disclosed records, which Plaintiffs—a free press organization and a journalist—"obtained through no unlawful or improper action."  *100Reporters v. Dep't of State*, 602 F. Supp. 3d 41, 84 (D.D.C. 2022) (denying as moot the government's claims regarding records that were inadvertently disclosed).  Here, as in *100Reporters*, "the Court has no reason to consider whether the proposed redactions would be proper, were the [government] allowed a mulligan."  602 F. Supp. 3d at 84.  Plaintiffs respectfully request that the Court deny Defendants' summary judgment motion as moot as to previously disclosed records and information.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied and Plaintiffs' Motion for Partial Summary Judgment granted.

Dated: August 18, 2023                    Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
D.C. Bar No. 1026115
Adam A. Marshall
D.C. Bar No. 1029423
Shawn Musgrave
D.C. Bar No. 90002165
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Fax: 202.795.9310
Email: ktownsend@rcfp.org
Email: amarshall@rcfp.org
Email: smusgrave@rcfp.org

Charles D. Tobin
D.C. Bar No. 455593
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, D.C. 20006-1157
Phone: 202.661.2200
Email: tobinc@ballardspahr.com

*Counsel for Plaintiffs*